# Commonwealth *v.* Swab, Appellant.

*Criminal law—Embezzlement—Accessory—Deputy county treasurer—Evidence.*

1. On the trial of an indictment against a deputy county treasurer for being an accessory to the embezzlement of public funds by the county treasurer, a conviction will be sustained where the evidence shows that the defendant received and disbursed the county moneys, kept all books and accounts, had the keys of the vault of the office and entire charge and control of the office, that he had full knowledge of what moneys had been paid out, knew of the shortage, and knew that the county funds had been used, when he had paid them out by direction of the treasurer, for the treasurer's own use, and that such payments were wholly unauthorized by law.

2. If the defendant himself embezzled funds, and by reason thereof it was impossible for the treasurer to turn over to his successor at the close of his term the amount due, such embezzlement by the defendant

486     COMMONWEALTH *v.* SWAB, Appellant.

would be an aiding and abetting in the embezzlement charged against the county treasurer.

3. In such a case where the indictment charges in one count that the defendant aided and abetted the county treasurer in the embezzlement of the county funds, and in another that he was aiding and abetting as an accessory to the defalcation of the county treasurer, it is not reversible error for the court to refuse to charge that the defendant could not be convicted on both counts. The acts charged are under sec. 65 of the Act of March 31, 1860, P: L. 382, but successive steps in one continuous transaction, and though the verdict be returned on both counts, the punishment cannot exceed the time provided by the statute.

*Criminal law—Statute of limitations—Embezzlement—Evidence.*

4. On the trial of an indictment charging the defendant with being accessory to acts of embezzlement by another person, acts of such a character may be shown to establish guilty knowledge on the part of the defendant prior to the statutory period of limitations, if it appears that one of the unlawful acts following the others in reasonably close sequence, be within the statutory period.

*Practice, C. P.—Trial—Appeals—Harmless error.*

5. A conviction in a criminal case will not be set aside because of statements made in the charge, where it appears that such statements were mere excerpts taken out of their connection, and could have done the defendant no harm taken in connection with the other language of the charge.

Argued Nov. 16, 1914.   Appeal, No. 243, Oct. T., 1914, by defendant, from judgment of Q. S. Northumberland Co., May Sessions, 1913, No. 9, on verdict of guilty in case of Commonwealth v. Mark L. Swab. Before Rice, P. J., Orlady, Head, Kephart and Trexler, JJ.   Affirmed.

Indictment for aiding and abetting and being an accessory in the embezzlement of public funds by the county treasurer.   Before Cummings, P. J.

At the trial it appeared that William M. Lloyd, the treasurer of Northumberland county, had been convicted of embezzling $19,497.38 of the public funds. The evidence showed that the defendant was deputy treasurer under bond, and that he had entire charge of

the office and book accounts of the treasurer and had paid out moneys by direction of the treasurer.

At the trial counsel for the commonwealth proposed to prove by William C. Miller, a witness upon the stand, that he is justice of the peace of the borough of Milton and was for some time prior to February 10, 1910; that as such justice of the peace he had a claim of the Hastings Publishing Co. against Wm. M. Lloyd, as an individual; that said claim either after or before being put in judgment was paid by check signed by Wm. M. Lloyd's name by the defendant and drawn upon the funds of the county of Northumberland. This for the purpose of showing guilty knowledge on the part of the defendant and also in support of the first, third and fourth counts in the indictment. Counsel for the commonwealth further proposes to show check No. 41, dated February 10, 1910, drawn on the Guarantee Trust & Safe Deposit Company of Mt. Carmel for the sum of $25.56, and ask him whether such check was given to him in payment of the claim of the Hastings Publishing Co.

Mr. Schaffer: This is objected to by the counsel for the defendant for the following reasons:

1. It appears by the date of the check that it was drawn on February 10, 1910, more than two years prior to the bill of indictment in this case and an offense, if any, is therefore barred by the Statute of Limitations.

2. For the reason that it is not proposed to be shown by the offer, or to be followed by evidence, that the check was paid with county funds.

3. For the reason that the check is no evidence of the making and drawing of the same by Mark L. Swab, the handwriting not having been proven.

Judge Auten: This to be followed by evidence that the check is in the handwriting of Mark L. Swab, the defendant, and that the signature of Wm. M. Lloyd thereto, followed by the initials of M. L. S., in the handwriting of the defendant..

Mr. Schaffer: Counsel for the defendant further ob-

jects because there is nothing upon the check, nor is there any evidence in the case thus far, to show that Mark L. Swab did bear any official relation to the county during the tenure of office of Wm. M. Lloyd; nor is there any evidence in the case thus far to show that he was an employee in the office of the county treasurer.

For the further reason that there is no evidence in the case that the defendant, Swab, was an agent or employee of the county of Northumberland, of whose funds it is charged he aided, abetted and was accessory to the embezzlement or the default of failure to turn over, as charged in the first, third and fourth counts of the indictment.

For the further reason, that it is not proposed to be followed by evidence showing that Wm. M. Lloyd was not carrying any account in the bank on which this check was drawn, or his own private funds in the same bank.

The Court: The objections are overruled, evidence admitted and bill sealed for the defendant. [11]

William M. Lloyd was asked this question:

"Q. Do you say now that Mark L. Swab was not responsible for any of this shortage?"

Mr. Schaffer: Objected to.

The Court: Objection overruled, evidence admitted and bill sealed for the defendant.

"Q. Do you say to this court and jury that Mark L. Swab is not responsible for any of this shortage? A. If there is any shortage of any money taken——"

Mr. Schaffer: Objected to.

The Court: Objection overruled, evidence admitted and bill sealed for the defendant.

"Q. Go on. A. If there is any shortage or any money taken from that office there Mr. Swab is the best man to answer that question, because he had absolute control in that office for the three years he was in there."

Mr. J. A. Welsh: Objected to and request that it be stricken from the record because it is not under the indictment.

The Court: The request is refused and bill sealed for the defendant. [10]

Defendant presented these points:

5. That the commonwealth has not offered a scintilla of evidence to show that there were any county funds in the William M. Lloyd, Treas. account at the time the expenditures complained of were made, and the commonwealth having failed to establish this fact beyond a reasonable doubt the defendant must be acquitted. *Answer:* Refused. [1]

11. The burden is upon the commonwealth to prove beyond a reasonable doubt, that at the times the defendant drew the several checks and made the several payments proved by the commonwealth he, the defendant, knew that the moneys were being paid out of county funds and that he, the defendant, further knew that the treasurer had no commissions earned to meet the checks; if the commonwealth fails in this the defendant must be acquitted. *Answer:* Refused. [2]

12. If the jury believe that Swab, the defendant, at the time he drew the checks and made the payments proved by the commonwealth, believed or had reasonable cause to believe that the treasurer had earned commissions sufficient to meet the checks and make the payments in question, then he cannot be convicted under this indictment. *Answer:* Refused. [3]

13. If the jury find that the defendant issued checks without the knowledge or consent of the county treasurer, or even appropriated moneys which he received for the treasurer, to his own use this would constitute a distinct and substantive offense for which defendant could not be convicted under this indictment. *Answer:* Refused. [4]

15. The defendant cannot be convicted on both the first and third counts of the indictment: Com. v. Mentzer, 162 Pa. 646. *Answer:* Refused. [5]

16. Whether Swab had formed a criminal intent to aid, abet or become an accessory must be determined

by the jury from the facts existing at the several times he drew the checks or made the payments proved by the commonwealth in this case. *Answer:* Refused. [16]

17. The indictment in this case having been found September 24, 1913, the jury cannot consider any acts of Swab prior to September 24, 1911, in passing upon the guilt or innocence of the defendant. *Answer:* Refused. [7]

The court charged in part as follows:

[I say further to you, gentlemen of the jury, that if Mark L. Swab actually took these funds himself, granting that Wm. M. Lloyd never knew anything about it, if Mark L. Swab actually took these funds himself, and so taking these funds made it physically impossible for Wm. M. Lloyd, the county treasurer, to turn over to the county the funds due and owing it, then Mark L. Swab would be guilty under this indictment of aiding and abetting Wm. M. Lloyd in the conversion of the funds, in being a defaulter and in not paying over to the county the funds of the county on demand.] [8]

[The question is solely for you to consider and decide as to whether there was a shortage, whether Mark L. Swab aided, abetted or assisted in the manner I have described to you in causing this shortage, knowingly and intentionally, and whether he has satisfactorily explained this transaction away to your entire satisfaction. It he has, then he should be found not guilty.] [9]

Verdict of guilty, upon which judgment of sentence was passed.

*Errors assigned* were (1–9) above instructions, quoting them; (10, 11) rulings on evidence, quoting the bill of exceptions.

*J. Fred Schaffer,* and *J. A. Welsh,* with them *J. I. Welsh,* for appellant, cited: Com. v. Keuhne, 42 Pa. Superior Ct. 361; Culp v. Com., 109 Pa. 363.

*Frank H. Strouss*, district attorney, and *Voris Auten*, with them *J. A. McDevitt*, for appellee, cited: Com. v. Shields, 50 Pa. Superior Ct. 1; Com. v. Shoener, 216 Pa. 71.

OPINION BY KEPHART, J., March 11, 1915:

The defendant, acting as the deputy treasurer of Northumberland county, was convicted under sec. 65 of the Act of March 31, 1860, P. L. 400, of aiding, abetting and being an accessory in the embezzlement of $19,497.38, by the treasurer of that county, in the treasurer's becoming a defaulter, and in the treasurer's failing to pay over, on demand, the amount due. Testimony was submitted by the commonwealth to show that at the close of the treasurer's term there was a shortage in his accounts with the county in the amount above specified. The expert who so testified had gone over the books and papers turned over to him by the defendant. They showed the moneys received and paid out for county purposes. The defendant admitted to the expert that he had made certain payments, not for county purposes, from the county's funds, which helped to make up this shortage. The entire shortage was not accounted for. The defendant, from the day the treasurer was inducted into office until the close of the treasurer's term, had absolute control and sole charge of the affairs of the office. He received and disbursed the county moneys, kept all books, memoranda and papers evidencing receipts and disbursements, had possession of the only key to the vault, and at no time, with the exception of one day, when the defendant went to Philadelphia, did the treasurer have the key or remain in the control of the office. It was incumbent on the defendant to know just what moneys the county had, what commissions the treasurer was entitled to, and if there was a shortage, it is evident that he was the only person who was in a position to know anything about it. The defendant conversed with the treasurer some weeks before the latter's term expired,

concerning the existence of this shortage, and volunteered to make a part of it good by raising money on his own property. The defendant, in his own behalf, admitted that he knew of the shortage long before his conversation with the treasurer concerning it, and he must have known it when he failed to account for the county's share of the liquor license fees for one of the previous years. As evidence bearing on the question of intent and to affect the defendant with guilty knowledge, it was shown that the county's funds were used by the defendant in paying bills not authorized by the county commissioners, and not for county purposes, such as purchase of diamond rings, brooch, cigars, election expenses, duebills and payment of various personal items of the treasurer, the use of the county's share of the money received from liquor license fees, and many other matters. When the defendant used the county's moneys, either in his own behalf at the direction of the treasurer, or for the treasurer personally, knowing, as he must have known, and as his duty, as well as his being in fact the sole custodian of the county's moneys, required him to know that the treasurer was not entitled to any money as commissions or otherwise, his acts in furtherance of these unlawful expenditures or payments would make him liable as charged under the several counts submitted to the jury under this indictment. The treasurer had been convicted as a principal for these offenses. With this evidence before the court the defendant's fifth, twelfth and sixteenth points were properly refused and the first, third and sixth assignments of error are overruled.

The matters contained in the second assignment of error were fully covered by the court in its general charge to the jury and the affirmance of other points presented by the defendant.

In the counts submitted to the jury, the commonwealth pressed for a conviction of the defendant in that he "did willfully and fraudulently aid and abet the said

William M. Lloyd in the several wrongful acts and misdemeanors aforesaid, (embezzlement, 1st count; a defaulter, 3rd count; and failing to pay over, on demand, the amount due, 4th count) and was then and there accessory to said unlawful acts and misdemeanors. . . ." Whether Swab could be convicted of the crime of embezzlement is not material: Commonwealth v. House, 10 Pa. Superior Ct. 259. The request for instructions was entirely too broad. It embraced all counts in the indictment. If defendant's acts amounted to an embezzlement of county funds, and by reason thereof it was impossible for the treasurer to turn over to his successor at the close of his term the amount due, this embezzlement by the defendant would be an aiding and abetting as charged in the fourth count of the indictment. The fourth assignment of error is overruled.

The facts in the case at bar present the converse of the proposition as passed upon in Commonwealth v. Mentzer, 162 Pa. 646. There the defendant was charged in one count for the separate and distinct offenses mentioned in sec. 65 of the Act of March 31, 1860. In the case before us the aiding, abetting, etc., in each offense was set out in separate counts. The evidence shows that the acts were but successive steps in one continuous transaction to which, when established, the various crimes as set forth in this section might apply. It was not the purpose of the legislature to segregate the different elements which go to make up a crime and apply to each of these elements a punishment and then to the completed whole a punishment, thereby creating a cumulative system of punishment; but it was intended, where the acts were so related one to the other that they may be said to be progressive or a succession of acts, that the punishment provided by the statute would be applied to the completed offense when it is determined. It may be impossible and impracticable for the district attorney to elect on which count he will ask for a conviction. The elements of the separate crimes men-

tioned are practically the same. We have a treasurer embezzling $19,000. By that act he is not only an embezzler but a defaulter and he fails to pay over, on demand, the money to his successor. While each of these conditions may constitute a separate offense, yet combined they constitute the offense of embezzlement, or separately they present a full statutory offense, but as said in Commonwealth v. Mentzer, supra, "it is not to be supposed that the statute intended that he should be indicted, convicted and sentenced to fifteen years on the separate branches of it. . . ." And if they were successive steps in the one taking of public money they would amount to but one crime in fact. "Into which category they fall must depend on the facts of each case, and therefore must raise a question for the jury." Though the verdict be returned on all counts, the punishment, where the four specific acts are but part of the same offense, cannot exceed the time provided by the statute, to wit, five years. The punishment in this case did not exceed this time. The fifth assignment of error is overruled.

The defendant was indicted under sec. 65 of the Act of 1860 in substantially its exact language. His principal was convicted under this same act. As stated in Commonwealth v. Keuhne, 42 Pa. Superior Ct. 361, "the fact that the indictment charges the crime substantially in the language of one statute is sufficient to warrant the trial and sustain a conviction for the offense created by that statute, but it will not warrant a trial for and conviction of an entirely different offense created by some other statute." It is there held that the period of limitation, as provided in the act of 1860, is not enlarged by the Act of June 12, 1878, P. L. 196. The limitation period is fixed by the act under which the indictment is found, but if the offenses described in the indictment came within a class mentioned in some other statute and in other respects the statute might apply, a trial and conviction under this statute would be sus-

tained.  It must be conceded that nowhere in the act of 1878 is there any provision covering all the counts in this indictment.

While some of the disbursements of county funds made by the defendant in behalf of the treasurer and himself were beyond the statutory period, they were continuous, being a series of unlawful acts, and the reason for their introduction, according to the offer, was to show guilty knowledge on the part of the defendant, and, under the authority of Commonwealth v. Sanderson, 40 Pa. Superior Ct. 416, the evidence was competent, provided it be made to appear that one of the unlawful acts, following the others in reasonably close sequence, be within the statutory period.  The indictment was returned September 24, 1913.  Lloyd authorized the defendant to take $1,000 of the county's funds to be used in the election of 1911, when the defendant was a candidate for treasurer to succeed Lloyd.  As accounting for this $1,000 used for campaign expenses, from the memorandum submitted by the defendant to the expert it appears that on September 25, 1911, he paid to Alfred Lloyd cash for Shamokin, $200; disbursements on account of other personal matters, viz.: November 7, 1911, a check was paid to Mike Lavelle for $5.00, and on December 2, 1911, Lloyd secured $1,460 for numerous personal items, at the time known to the defendant.  It likewise appears that the defendant drew his salary up until December 31, 1911, from county funds.  The position this defendant held, his control of the county's finances, the fact that the shortage existed, with all the circumstances surrounding it, with the evidence of the items just mentioned, amply warranted the verdict as found.  The seventh and eleventh assignments of error are overruled.

The eighth and ninth assignments of error complain of the charge of the court.  It is apparent from the evidence that over $19,000 was taken from Northumberland county.  This defendant was in absolute control

of this money, the treasurer was there but one day, and when the trial judge made the remark, in illustrating another point in his charge, "if Swab actually took these funds himself," it did the defendant no harm, as the charge as a whole presented the case fairly. The same may be said of other language, "whether he has satisfactorily explained this transaction away to your entire satisfaction." This excerpt, if it referred to all the evidence produced by defendant, would be manifestly unfair to the defendant, but the court below was commenting upon the defendant's testimony concerning the possibility of errors in the accounts being made by clerks, who were employed by the defendant or the treasurer, and which would account for this shortage. The trial court, in its charge, on the question of reasonable doubt and in answer to many of the defendant's points, fully stated the law and dissipated any ill effect that this remark might have made. See Commonwealth v. Nye, 240 Pa. 359; twelfth assignment of error and answer thereto. These assignments of error are overruled.

The treasurer, Lloyd, in testifying as to the responsibility for the shortage, if there was one, that Mr. Swab was "the best man to answer that question because he had absolute control in that office for the three years he was in there," did so because of his cross-examination by the appellant. We feel that the evidence was proper in view of the testimony that had been previously brought out. The tenth assignment of error is overruled.

The case was carefully tried by able and zealous counsel and was submitted by the learned president judge in a clear and impartial charge, which is free from substantial error.

The judgment is affirmed, and it is ordered that the defendant, appellant, appear in the court below at such time as he may be there called, and that he be by the court committed until he has complied with the sentence or any part of it that had not been performed at the time this appeal was made a supersedeas.