# Commonwealth *v.* Wheeler, Appellant.

*Criminal procedure—Embezzlement—Two indictments for offenses growing out of same relationship—Trial—Discretion of court.*

On the trial of indictments charging that the defendant, as an attorney, with intent to defraud had appropriated to his own use property of his client, the case is for the jury and a verdict of guilty will be sustained, where the evidence established that the defendant in the course of his employment received certain moneys which he appropriated to his own use, and also, pledged and afterwards sold a certificate of stock entrusted to his care by his client.

In such case, it is a matter for the discretion of the court to determine whether or not two indictments charging different offenses, which both grew out of the same fiduciary relations with the same client, although in one case she acted as guardian and in the other as executrix of her husband's estate, are to be tried at the same time.

*Criminal law—Embezzlement—Evidence—Statement of defendant—Admissibility.*

On the trial of an indictment of an attorney for embezzlement a statement made by the defendant to his client, after his defalcation has been discovered, and the explanation which he gave when the

fact was called to his attention that he claimed credit for certain payments which had not been made, is admissible in evidence. Such statement was admissible upon the ground that it was part of the conversation, in which the defendant confessed the misappropriation of the property, specifically charged in the indictments. It was admissible also for· the purpose of showing the motives and intentions of the defendant when he appropriated to his own use the property charged in the indictments. The evidence tended to establish that the misappropriation of property was not accidental or under a mistaken claim of right. The fact that it included particular items of defalcation, which were not charged in either of the indictments, did not render it inadmissible.

On the trial of an indictment for embezzlement, where the defendant, after receiving the funds which he misappropriated, first placed them to the credit of a company of which he was treasurer and thereafter embezzled part of the funds for his own use, it is not necessary that the indictment should aver that the money stolen was the property of the company. The law, in prosecutions for embezzlement will follow money embezzled through a dozen reinvestments, so long as it is in the hands of the embezzler. The money which has come into the defendant's hands by virtue of his employment may be changed in form but it still remains the property of the true owner, as against the embezzler. Where the defendant, after all his manipulations, finally procured the money which he had undertaken to pay to the creditors of his client, it was still that client's money and an averment to that effect was sufficient.

*Criminal law—Embezzlement—Statute of limitations—Date of crime.*

Where an attorney, charged with embezzlement, pledged certain shares of stock of his client in November, 1915, as security for his own debt, but did not sell the same until May, 1916, a prosecution brought within two years from the latter date is not prohibited by the statute of limitations. Even if the defendant was guilty of the violation of the statute when he pledged the stock, in November, 1915, the stock, subject to the pledge was still the property of his client, and remained subject to the control of the defendant, in the exercise of the authority which his client had conferred. The pledging of the stock was a distinct transaction and while it may have involved a violation of the statute, the defendant had not so far parted with the control of the stock, nor so completely wiped out the property of his client therein, as to exempt him from liability for his subsequent unlawful act of selling the stock. The sale of the stock was a distinct transaction spe-

cifically prohibited by the statute, and an indictment found within two years of this culminating offense will be sustained.

Argued March 11, 1919.  Appeals, Nos. 259 and 260, Oct. T., 1919, from judgment of Q. S. Phila. County, April Sessions, 1918, Nos. 552 and 553, on verdict of guilty in the case of Commonwealth of Pennsylvania v. William T. Wheeler.  Before Orlady, P. J., Porter, Henderson, Head, Trexler, Keller and Linn, JJ.  Affirmed.

Indictment for embezzlement as attorney at law and agent.  Before Johnson, P. J., Seventeenth Judicial District, specially presiding.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty upon which judgment of sentence was passed.  Defendant appealed.

*Errors assigned* were various rulings on evidence, the action of the court in ordering both indictments to be tried together and refusal to direct a verdict in favor of the defendant upon indictment No. 553 on the ground that the indictment was not found until more than two years after the commission of the crime charged.

*William A. Gray,* for appellant.—The indictment No. 553, charging the defendant with the conversion of the stock certificate was barred by the statute of limitations: Commonwealth v. Levi, 44 Pa. Superior Ct. 253; Huffman v. McCrea, 56 Pa. 95; Brolaskey v. McClain, 61 Pa. 146; McDermott v. Hoffman, 70 Pa. 31; Deppen, v. Bogar, 7 Pa. Superior Ct. 434; Com. v. Scheiring, 61 Pa. Superior Ct. 261; DeHaven's Est., 25 Pa. Superior Ct. 507; Stephen v. Wingett's App., 122 Pa. 486.

*Joseph H. Taulane,* Assistant District Attorney, and with him *Samuel P. Rotan,* District Attorney, for appellee.

OPINION BY PORTER, J., October 11, 1920:

The defendant was tried and convicted upon two indictments drawn under section 114 of the Act of March 31, 1860, P. L. 410, charging that he had as an attorney, with intent to defraud, appropriated to his own use the property of his client. The first question involved in these appeals, which has been earnestly argued by counsel, is, did the court err in ordering the indictments to be tried together, before the same jury?

The offenses charged in the indictments, respectively, were misdemeanors, and grew out of the same course of employment. It is true that the property alleged to have been misappropriated in one of the indictments was that of Harriet R. Joyce, guardian of the estate of John Joyce, Jr., while in the other the property involved was that of Harriet R. Joyce, executrix of the last will and testament of John Joyce, Jr., deceased. Harriet R. Joyce was, in 1915, guardian of the estate of her husband, John Joyce, Jr., under an appointment of the probate court at Columbus, Ohio, and there is no question that, under the evidence presented, she had the lawful authority to manage and dispose of the personal property belonging to that estate. She employed this appellant, in her capacity as guardian, to act as her attorney, both she and her husband having become domiciled in the County of Montgomery, in the State of Pennsylvania, and she gave into the custody of the defendant, at the City of Philadelphia, considerable sums of money and valuable securities, the property of the estate of her ward, and very largely committed to the care of said attorney the management of the estate. John Joyce, Jr., died in June, 1916, having first made his last will and testament, upon which letters testamentary were duly issued, in Montgomery County, to Harriet R. Joyce, as the executrix of his will. The executrix still retained as her attorney this appellant whose relationship to the property of the estate and control over it remained the same, although the relationship of Harriet R. Joyce to

the estate had been changed from that of guardian, acting under the laws of the State of Ohio, to that of execu-trix, under the laws of the State of Pennsylvania. The relation of the appellant, as attorney, to Harriet R. Joyce, the representative of the estate of John Joyce, Jr., was continuous from May, 1915, to late in the month of May, 1917. These facts rendered the question whether these indictments, which charged only misdemeanors, should be tried together, one to be determined by the court below, in the exercise of a sound discretion: Withers v. Commonwealth, 5 S. & R. 59; Commonwealth v. Hartman, 31 Pa. Superior Ct. 364. This being a matter with regard to which the court below was vested with discretion, we would not be warranted in holding the determination of the court below to be erroneous unless an abuse of that discretion was made clearly manifest. The assignments of error which are based upon this ruling are dismissed.

The court below did not err in admitting in evidence the statement made by the defendant to his client after his defalcation had been discovered, and the explanation which he made when the fact was called to his attention that he had claimed credits for certain payments which had not been made. This statement it is true included particular items of defalcation which were not charged in either of the indictments. The evidence was admissible, however, upon the ground that it was a part of the conversation in which the defendant confessed the misappropriation of the property specifically charged in the indictments. It was admissible, also, for the purpose of showing the motives and intentions of the defendant when he appropriated to his own use the property charged in the indictments, the other items of defalcation having occurred in the same course of employment, dealing with the same subject-matter, and contributing to the same specific result. This evidence tended to establish that the misappropriation of property charged in the indictments was not accidental or under a mis-.

taken claim of right: Commonwealth v. Valverdi, 32
Pa. Superior Ct. 245; Commonwealth v. Shields, 50 Pa.
Superior Ct. 1; Commonwealth v. Swab, 59 Pa. Superior
Ct. 495. The specifications of error which refer to the
admission of this evidence are overruled.

The learned counsel representing the appellant argues
that the court erred in refusing binding instructions in
favor of the defendant upon the indictment No. 552.
He bases this argument upon the following statement:
Harriet R. Joyce, the executrix, testified that she gave
to the defendant a check for $20,260 for the purpose of
paying to Albert Joyce $9,260 and to Edward F. Powell
$11,000. That check, however, was drawn to the order
of the Joyce Realty Company, of which company this
appellant was the treasurer. The appellant deposited
that check in the bank account of the Joyce Realty Co.,
and then, as treasurer of the Joyce Realty Co., drew a
check for $5,000 payable to the order of Albert Joyce
and a check for $5,000 payable to the order of Edward
F. Powell, and in that way paid to Albert Joyce and
Edward F. Powell the amount of said checks. It is con-
tended that as the check was payable to the Joyce Realty
Co. the money became the property of the Joyce Realty
Co. and the defendant would be liable to an indictment
for embezzling the same as the property of the Joyce
Realty Co., but not as the property of Harriet R. Joyce,
executrix. This contention is without substantial foun-
dation. The law considers substance, not shadows. The
evidence produced by the Commonwealth, if believed,
established that, when the check was given, Harriet R.
Joyce, executrix, for the purpose of paying to Albert
Joyce $9,260 and to Edward F. Powell $11,000, proposed
to the defendant that she give her checks payable to
those men, for the sums due them, respectively, upon her
account in the Commercial Trust Co. The defendant pre-
vailed upon her not to draw her checks payable to the
order of Joyce and Powell, for the amounts respectively
due them, but to draw one check for $20,260, payable to

the order of the Joyce Realty Co., he, the defendant, undertaking to use that check for the purpose of paying to Joyce and Powell the amounts due them, respectively. Mrs. Joyce drew her check in the form which the defendant desired, and delivered it to the defendant. The defendant, did, as treasurer of the Joyce Realty Co., endorse the check and deposit it in the account of that company with the Merchant Union Trust Co. The money did not, however, remain to the credit of the Joyce Realty Co.; the appellant, as treasurer of the Joyce Realty Co., drew his checks to Joyce and Powell, for $5,000 each, but he also drew his checks, as treasurer, for the amounts which he failed to pay, as directed by his client, to Joyce and Powell, and appropriated that $10,260 to his own use. The defendant never charged himself on the books of the Joyce Realty Co. with this sum of $20,260, and, after his defalcation was discovered, he confessed to Mrs. Joyce that his purpose in inducing her to make the check payable to the order of the Joyce Realty Co., instead of making two checks payable to Powell and Joyce for the amounts due them, was so that he could use the money for his own purposes. This $20,260 never became the property of the Joyce Realty Co., it never was the intention of this appellant nor his client that it should become the property of the Joyce Realty Co. and be used for the purpose of that corporation. The money at the time the check was given was in the account of Mrs. Joyce, as executrix, with the Commercial Trust Co.; the purpose of giving the check was so that the defendant could take it out of that institution and pay it to Powell and Joyce. It mattered not how many banks or companies the defendant put the check through, the ultimate purpose was to take that money out of the Commercial Trust Co. and pay it to Joyce and Powell, and this the defendant undertook to do for his client. The law, in prosecutions for embezzlement, will follow money embezzled through a dozen reinvestments, so long as it is in the hands of the embezzler. The money

which has flowed into the defendant's hands by virtue of his employment may be changed in form but it still remains the property of the true owner, as against the embezzler. When this appellant, after all his manipulation, finally procured the money which he had undertaken to pay to the creditors of his client, it was still that client's money: State v. Disbrow, 130 Iowa 19; Commonwealth v. Mead, 160 Mass. 319. The court did not err in declining to withdraw this indictment from the consideration of the jury.

Counsel for the appellant contend, also, that the court should have directed a verdict in favor of the defendant upon the indictment No. 553. That indictment charged that the defendant was, as an attorney-at-law, employed by Harriet R. Joyce, guardian of the estate of John Joyce, Jr., and as such attorney was entrusted for safe custody, with one certificate for one hundred shares of the common capital stock of the American Light & Traction Co., and that he did, with intent to defraud, sell, transfer, convert and appropriate the said property, being of the value of $38,000, to and for his own use. The evidence disclosed that Harriet R. Joyce, guardian, had, in October, 1915, at the request of the defendant, delivered to the defendant the certificate of stock in question, and signed, in blank, the authority to transfer the said stock, in the usual form upon the back of the certificate. The purpose for which the certificate was thus delivered to the defendant, with the signature of his client to the warrant of attorney for the sale and transfer of the stock, was that the defendant might be able to quickly raise money, in order to purchase stock of the Green-Joyce Co., a corporation in which the client was interested and of which she desired to obtain control. The appellant, on November 8, 1915, caused the stock to be transferred upon the books of the company and obtained a new certificate in his own name; and later in the same month pledged it for a loan of $8,000. It does not appear in evidence what he did with the money thus

obtained, so far as the evidence indicates he may have lawfully applied it to the uses of his client. In January, 1916, Mrs. Joyce, as guardian, sold out all her stock in the Green-Joyce Co., and thereupon said to the defendant that it would not now be necessary to sell the stock in the American Light & Traction Co. The defendant told her that he would still keep the certificate, in order that he might be in position to raise funds in case it was required to settle the account in the probate court in the State of Ohio. The defendant, on May 2, 1916, assigned the certificate and sold the stock for $37,000, receiving over $27,000 in cash, after paying the amount for which it was pledged, which sum he appropriated to his own use. The indictment was found in April, 1918. The appellant contends that the court should have held as matter of law that the embezzlement occurred in November, 1915, and, the indictment not having been found until more than two years after that date, the defendant should be acquitted. It seems clear that the court could not, under the evidence, have declared as matter of law that the mere transfer of the stock and the taking out of a new certificate in the name of the defendant was with the intent to defraud. The certificate having been delivered to the defendant for the purpose of enabling him to raise money for the purchase of other stock, the jury might well have found that this was done without fraudulent intent. The very purpose of delivering the certificate, with the power of attorney for its transfer signed by the holder, implied the authority to use that transfer. When the defendant caused the stock to be transferred to his own name, it remained, as between him and his client, still the property of the client, with authority in the defendant to use it for the purpose for which it had been put into his hands. When, a few days later, he pledged it for a loan of $8,000, the court could not declare, in the absence of evidence as to how that money was used, that the pledge had been with intent to defraud. The 114 section of the Act of March 31,

1860, P. L. 410 enacts: "If any person, being a banker, broker, attorney, etc., and being entrusted, for safe custody with the property of any other person, shall, with intent to defraud, sell, negotiate, transfer, pledge or in any manner convert or appropriate to or for his own use......such property, or any part thereof, he shall be guilty of a misdemeanor." Each of the acts thus designated, though of varying character and degree of moral turpitude, is of equal legal import, and by itself constitutes the full statutory offense. Prima facie each of such acts charged is a separate crime, and where such is the fact no two can be charged in the same count. Where two or more of the enumerated acts are in truth only successive steps in one appropriation or embezzlement of the same money, it would be contrary to the fundamental principles of our criminal jurisprudence to hold that they had not merged and become but one offense. "The specified acts may, therefore, be distinct and separate offenses, or they may be so entirely parts of the same transaction that they combine to make but one. Into which category they fall must depend upon the facts of each case, and, therefore, must raise a question for the jury": Commonwealth v. Mentzer, 162 Pa. 646. Even if the defendant was guilty of violation of this section of the statute when he pledged the stock, in November, 1915, the stock, subject to the pledge was still the property of his client, and remained subject to the control of this appellant, in the exercise of the authority which his client had conferred: Commonwealth v. Tuckerman, 10 Gray (Mass.) 173; People v. Hanley, 226 N. Y. 453. The stock remained thus pledged, being in the name of the defendant, but still the property of his client, until May 2, 1916. That pledging of the stock was a distinct transaction and while it may have involved a violation of the statute, the defendant had not so far parted with control of the stock nor so completely wiped out the property of his client therein, as to exempt him from liability for his subsequent unlawful act of

Opinion of the Court.    [75 Pa. Superior Ct.

selling the stock.   The sale of the stock, as disclosed by the evidence in this case, was a distinct transaction, specifically prohibited by the statute, and the indictment was found within two years of this culminating offense.   All the specifications of error are dismissed.

The judgment is affirmed and it is ordered that the defendant appear in the court below at such time as he may be there called and that he be by that court committed until he has complied with the sentences, or any parts of them which had not been performed at the time the appeals in these cases were made a supersedeas.