Commonwealth *v.* Huster, Appellant.

Argued March 11, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Edward A. Kelly,* for appellant.

*Franklin E. Barr,* Assistant District Attorney, with him *Edwin M. Abbott,* special Attorney General, for the Secretary of Banking, and *Charles F. Kelley,* District Attorney, for appellee.

OPINION BY RHODES, J., May 3, 1935:

The defendant was title and trust officer and also a director of the Northwestern Trust Company. He appeals from a conviction on three indictments, the first counts of which are drawn under the Act of June 12, 1878, P. L. 196, Sec. 1, 18 PS 2511, and the second counts of which are drawn under the Act of April 23, 1909, P. L. 169, Sec. 1, as amended by the Act of April 16, 1929, P. L. 524, Sec. 1, 18 PS 2516. The Act of 1878 makes it a misdemeanor for an officer, director, agent, attorney or member of any bank or other body corporate to fraudulently take, convert or apply to his own use, or the use of any other person, any of the money or other property of such bank or body corporate, or belonging to any person or persons, corporation or association, and deposited therein, or in possession thereof.

The Act of 1909, as amended by the Act of 1929, makes it a misdemeanor for the president, or certain other officers, or for a bookkeeper, clerk, employee or agent of any bank of discount and deposit, trust company, or numerous other institutions receiving deposits of money, to embezzle, abstract or wilfully misapply any of the moneys, funds, or credits of any such institutions, with intent to injure or defraud such institution.

The evidence shows that the appellant, as title and trust officer, was head of the real estate department of the Northwestern Trust Company for about twelve years prior to its closing on July 17, 1931. He was also a director of this Trust Company during the last three years of its existence. In addition, he became the owner of considerable real estate in the City of Philadelphia and in the County of Montgomery, some of these properties being in his own name, others being held for him in the name of another. Among the properties which he owned, all of which were mortgaged, were 6530, 6534

and 6536 Woodstock Street, property at 16th and Lycoming Avenue, and 1519 Olney Avenue in the City of Philadelphia and Cedarbrook Park, a tract consisting of about 46 acres, purchased in 1923 for $2,000 an acre and located in Montgomery County. The Cedarbrook Park tract was apparently divided into four sections known as sections A, B, C and D. Section A was transferred to Mr. Lambrecht, a builder, for the purpose of a real estate development, and some sixteen houses were erected thereon. This building operation was financed by the Northwestern Trust Company, which took first mortgages on the houses built and later sold the mortgages to individuals or assigned them to itself as trustee or executor of various estates. The proceeds of such houses as were sold went to the defendant.

One of these properties in section A, to wit, 8351 Limekiln Pike, where defendant lived and had his home, was transferred by Lambrecht to the defendant, subject to a $15,000 mortgage to the Northwestern Trust Company. This mortgage on the defendant's home was assigned by the Trust Company to itself as executor of the estate of Herbert F. Gillingham, deceased.

During a period from 1925 to March 31, 1928, the interest due on the mortgages on these various properties which Huster owned was paid, not by Huster, but out of the funds of the Northwestern Trust Company by checks of the real estate department. The amount so paid by the Northwestern Trust Company during this period was $29,445. Of this amount payments of $1,889.34 were made from March 20, 1928, to March 31, 1928, and constitute the items alleged to have been embezzled as set forth in one of the indictments.

On March 30, 1928, the Northwestern Trust Company loaned the defendant $75,000 secured by a second mortgage on tract C, which was unimproved, and, with tract D, was subject to a purchase money mortgage of $57,672. From this $75,000 loan the defendant repaid

the Northwestern Trust Company the accumulated mortgage interest advanced in the amount of $29,445. From that loan he also made certain other payments which are not material. Defendant never paid back any part of this $75,000 loan.

From March 31, 1928, until 1931 the interest on the mortgages covering the various properties of the defendant was again paid from the funds of the Northwestern Trust Company by checks of the real estate department. These payments of interest, together with one payment for taxes in the amount of $201.49 which was also paid from the funds of the Trust Company by a check of the real estate department signed by the defendant personally as title and trust officer, and the subject of a separate indictment, aggregated about $47,000.

On March 27, 1931, defendant obtained another loan from the Northwestern Trust Company in the amount of $50,000. This loan was evidenced by a collateral note having as security a third mortgage in the amount of $150,000 to the Northwestern Trust Company covering sections C and D, an undeveloped portion of the Cedarbrook tract. This mortgage was subject to first and second mortgages, including one of $60,000 covering tract D to the Newkirk Building and Loan Association, aggregating $192,672. Real estate experts testified that these sections containing 39.8 acres had a value in 1931 of only $2,000 per acre.

From the $50,000 loan on March 27, 1931, interest payments made by the bank were repaid, but defendant never repaid the $50,000.

As the interest on these mortgages on his properties fell due, a notice to that effect was placed upon Huster's desk by the bookkeeper. The payments were then made by checks of the real estate department, of which Huster was the head, signed by Mr. Robinson, as treasurer of the company, and by S. C. Clement, as assistant title

officer, who was authorized and directed by the defendant to sign all checks in his absence.

The payments of interest set forth in the indictments include the payments of interest on the house in which defendant lived, and the payments of interest on various properties from which he received and kept the rents while the Trust Company was paying the interest on the mortgages covering these properties.

The contention of the Commonwealth was that the defendant was the head of the real estate department of the Northwestern Trust Company; that the checks of this department drawn upon the funds of the Trust Company, signed by his subordinate under his direction, were used by him to pay the interest on the mortgages on his various properties; that the funds of the Trust Company were likewise used by him to pay a lien against his property, the check for which was signed by the defendant himself, and that these payments constituted the wilful misapplication and embezzlement with which he was charged in the indictments.

Appellant admitted that the interest payments on mortgages on his properties were made out of funds of the Trust Company, but claimed (1) that these payments were not made at his direction, even though he benefited thereby, but at the direction of Mr. Robinson, the active head of the Trust Company, and that the defendant could not have prevented the payments from being made; and (2) that these payments were made pursuant to an established custom or business policy of the Trust Company to pay the interest on mortgages taken on building operations and sold and assigned by it until such time as the properties passed into the hands of home owners.

Appellant has filed seventeen assignments of error which we shall consider in the order of their importance.

Appellant's fifteenth assignment of error relates to the lower court's refusal to direct a verdict for the

defendant under all the evidence. The facts in this case not only justify a finding that the funds of the Trust Company were paid out under the direction and control of the defendant and used for his benefit in the payment of his own obligations and indebtedness, but also show on the part of the defendant, an officer and director of this Trust Company, an utter disregard for the welfare of the institution and an unconcern for its solvency. The evidence was sufficient to warrant the jury in finding the defendant guilty of fraudulently taking, converting and applying to his own use and benefit, the moneys of the Northwestern Trust Company, and of embezzling, abstracting and wilfully misapplying its funds with intent to injure and defraud this institution. While the offense of wilful misapplication of the moneys, funds or credits of the Trust Company under the Act of April 23, 1909, P. L. 169, Sec. 1, as amended by the Act of April 16, 1929, P. L. 524, Sec. 1, 18 PS 2516, must be committed by the defendant with intent to injure or defraud the Trust Company, that intent may be shown or be inferred from the doing of the wrongful, fraudulent and illegal acts which in their necessary results naturally produce loss or injury to the Trust Company. See 3 R. C. L. 508. The evidence in this case was sufficient to warrant the jury in finding such intent within the meaning of the Act. The fifteenth assignment of error is overruled.

All the other assignments of error which merit consideration relate to the admission or rejection of testimony.

The first, second and third assignments of error relate to the admission of any evidence of payments of interest on mortgages on properties owned by Huster and paid by the Trust Company subsequent to 1925 and prior to March 20, 1928, the date of the first payment alleged in the indictments, and which were barred by the statute of limitations.

While it is generally true that evidence of similar prior offenses cannot be used to prove the commission of the one for which the defendant is indicted, there are certain well defined exceptions to that rule. This evidence tended to show a course of conduct and the relationship between the defendant and the Trust Company, and was admissible, "for the purpose of showing the motives and intentions of the defendant when he appropriated to his own use the property charged in the indictments, the other items of defalcation having occurred in the same course of employment, dealing with the same subject matter, and contributing to the same specific result": Commonwealth v. Wheeler, 75 Pa. Superior Ct. 84, 88. This evidence also tended to establish the fact that the offenses charged in the indictments were wilful and intentional, and that the defendant was not the innocent beneficiary of the acts of another.

The law is clearly stated by the Supreme Court, in affirming the judgment of the Superior Court, in an opinion by Mr. Justice SIMPSON in Commonwealth v. Bell, 288 Pa. 29, 34, (135 A. 645) "This evidence, documentary and oral, was admissible under the well-settled rule that evidence of similar and unconnected offenses may be offered to show guilty knowledge, design, plan, motive and intent when such is in issue, and this is true although the other offenses are beyond the statutory period: Com. v. Swab, 59 Pa. Superior Ct. 485; Com. v. Shields, 50 Pa. Superior Ct. 1; Goersen v. Com., 99 Pa. 388; Com. v. Johnson, 133 Pa. 293. Here the evidence tended to show that the offenses charged were part of a system and were wilful and intentional and could not have been the result of accident or mistake."

Appellant contends, although his assignments of error four, five, nine and ten covering this question do not raise the point as clearly as might be desired, that the court erred in admitting evidence concerning the grant-

ing of loans for $75,000 and $50,000 respectively, by the Trust Company to Huster; also that the evidence of any mortgages outstanding and covering the Cedarbrook Park tract at the time said loans were made by the Trust Company was irrelevant.

We think the evidence was admissible as bearing upon the question of whether or not the original payments of interest by the Trust Company were made as purely business transactions on the part of the Trust Company for its own benefit, or whether they were really a taking of its money for the defendant's own purposes. The Trust Company records show that the interest items charged in the indictments were later repaid. The evidence showing method of repayment by means of these loans was admissible and relevant as a part of the defendant's transactions. The lower court carefully charged that the loans of the defendant were not the basis of any criminal charge, and that the evidence discloses nothing illegal or criminal about them. We are not convinced that the court committed error in admitting this testimony.

The testimony of the real estate experts (eleventh, twelfth and thirteenth assignments of error) showing the value of this land on which the mortgages were given was relevant for the same reasons that the evidence relating to the mortgages and loans themselves was relevant. There is no objection on the record to the qualifications of these witnesses. They testified as to the value of the property in March, 1931, when the $50,000 loan was made by the Trust Company to the defendant, which loan was secured by a third mortgage subsequent to prior loans in the amount of $192,672 on undeveloped land which was purchased by the defendant for $2,000 an acre in 1923, and which according to the witnesses had a value of $2,000 an acre in March,

1931. We find no error in the admission of this testimony.

This leaves for our consideration the sixth, seventh, eighth and fourteenth assignments of error. Defendant complains of the rejection of certain testimony relative to the alleged custom and business practice of the Northwestern Trust Company of paying interest on the mortgages of others. Defendant's contentions as to such custom and practice fully appear elsewhere in the evidence and were adequately considered by the learned trial judge in his charge to the jury.

The remaining assignments of error are to the court's refusal of defendant's motion for new trial and to its entry of judgment and sentence.

We are of the opinion, from an examination of the record, that the evidence was sufficient to support the verdict of guilty, and that the record is free from reversible error. The defendant had a fair and impartial trial, and no exceptions were taken to the comprehensive charge of the learned trial judge. We find no reason for disturbing the judgment. All of the assignments of error are overruled.

The judgment of the lower court is affirmed, and it is ordered that the defendant, P. William Huster, appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with the sentence, or any part of it, which had not been performed at the time the appeal in this case was made a supersedeas.