# Christy's Estate.

*Will—Construction—Heirs—Estate tail—Rule in Shelley's case—Life estate.*

1. Where a testator by a will dated prior to Act of July 9, 1897, P. L. 213, gives the proceeds of real estate to a son during his lifetime, and "after his death it shall go to his heirs free and unincumbered by any

debts of his except for developing mines," and further directs that if the son "should die without heirs" the real estate in question should go to the testator's sister and brothers, and their heirs, the son takes an estate tail under the rule in Shelley's case converted by the Act of April 27, 1855, P. L. 368, into a fee simple estate.

2. The word "heirs" following the gift to the son is a word of limitation of the estate and not a word of purchase. In using it testator intended not individuals, but quantity of estate, and descent.

Argued Oct. 30, 1912. Appeal, No. 81, Oct. T., 1912, by F. J. Christy et al., from decree of C. P. Blair Co., No. 188, O. C. Docket 1911, dismissing exceptions to auditor's report in Estate of John T. Christy. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Exceptions to report of Thomas C. Hare, Esq., auditor. The facts are stated in the opinion of the Superior Court.

*Errors assigned* were in dismissing exceptions to auditor's report.

*W. C. Fletcher*, with him *J. F. Sullivan*, for appellant.— When an unlettered person speaks of his heirs, he ordinarily means his children, at least the term is frequently used in that sense; and according as has been before said to effectuate the intention of the testator, the term "heirs" has frequently been held to mean children: Hallowell v. Phipps, 2 Whart. 376; Berg v. Anderson, 72 Pa. 87; Wells v. Ritter, 3 Whart. 208; Daley v. Koons, 90 Pa. 246; Ivins v. Scott, 26 Pa. 215.

*Wm. J. Breene*, with him *Edmond C. Breene*, for appellants, Blanche Keefe, Loretta Bodley et al.

*W. L. Pascoe*, of *Stevens & Pascoe*, for appellee.—The word "heirs" is always to be presumed to have been used by a testator in its technical sense, and to be regarded as a word of limitation and not of purchase, unless it very

clearly appears that it was used and intended by him in some other sense: Cockins' App., 111 Pa. 26; Heister v. Yerger, 166 Pa. 445; Grimes v. Shirk, 169 Pa. 74; Curry v. Patterson, 183 Pa. 238; Clark v. Scott, 67 Pa. 446; Dodge's App., 106 Pa. 216; Ivins's App., 106 Pa. 176.

OPINION BY PORTER, J., February 27, 1913:

This appeal is from a decree of the court below making distribution of a fund consisting of the royalties accruing under certain leases for mining coal upon lands in Cambria county, of which John T. Christy died seized. The question we have to decide is one of title to the land, the nature of the estate which Francis M. Christy acquired under the will of his father, the testator. The testator, by his will, first made provision for his wife, Mary A. J. Christy, by devising to her certain property in fee, and then devised to her a life estate in the residue of his property, which included the tract in question, by a clause in the words following, viz.: "And the one-third of all the rents and income of my estate, as long as she remains my widow. . . . If Francis, my son, should die before marriage his mother shall be his heir during her widowhood." The testator then proceeded to make provision for Francis, his only son, by devising to him certain real estate in fee to be presently enjoyed, and following these devises come the clauses of the will which are material to the consideration of this case, being the only clauses of the will making disposition of the Cambria county lands after the death or remarriage of Mary A. J. Christy, the widow. This devise was in the following words: "He shall have the two-thirds of all my lands in Gallitzin Township, Cambria Co., the income of rent liens during his mother's widowhood. After he shall have all the proceeds during his lifetime. After his death it shall go to his heirs free and unencumbered by any debts of his except for developing mines &c.—If my son Francis should die without heirs I leave my sister Sarah Inlow the one-fourth of my estate (her husband nothing). The other three-fourths to my broth-

ers and their heirs, except Josiah's daughter Elizabeth shall have no interest. The heirs of Mrs. Agnes Burk, decs. and Mrs. Lucy Ann Riffle shall not inherit any part of my estate." This will was executed and the testator died long prior to the approval of the Act of July 9, 1897, P. L. 213, and that statute can have no effect upon its construction. Mary A. J. Christy, the widow of testator, died on September 26, 1905. Francis M. Christy, the son, married during the lifetime of the widow, and having survived her, died on January 30, 1910, without issue. He, by his last will and testament, since duly probated, devised the lands in question to his widow, Mary R. Christy, the appellee. The fund for distribution has accrued as royalties from the mining operations conducted since the death of Francis M. Christy. If Francis M. Christy took an estate in fee in the lands, under the will of his father, the appellee is entitled to receive the royalties in question, if, on the contrary, he took but a life estate, then the appellants are entitled to take, under the devise over to the sister and brothers of testator.

Francis M. Christy having not only married but outlived the widow of the testator, the contingency upon which the widow was to take, during her widowhood, the share of the estate devised to Francis never happened; that devise fell. We have, therefore, only to consider the clauses of the will disposing of the remainder after the termination of the particular estate which the testator created in order to make provision for his widow during her widowhood. There can be no doubt, under the provisions of the will, that the intention of the testator was that the land should go, after the death of the widow, to Francis during his lifetime, and that the remainder, after the life estate of Francis, should "go to his heirs free and unencumbered by any debts of his except for developing mines." The devise over, "If my son Francis should die without heirs," is to the sister and brothers of the testator and their heirs. This language clearly implies that he did not intend his sister and brothers, or their

heirs, to take, unless those whom he calls the heirs of his son should fail, and as the devise over, after failure of heirs of his son, is to his own sister and brothers and their heirs, he must necessarily have meant a class of heirs amongst whom his own sister and brothers could not have been enumerated, for otherwise he would be making a gift over which could not take effect until after the extinction of the persons to whom it would have been given. This being so, it is well settled that the proper construction of the will is to take the word "heirs" to mean "heirs of the body:" Doebler's Appeal, 64 Pa. 9; Bassett v. Hawk, 118 Pa. 94. The language of the testator can only be construed to mean that he intended to vest a life estate in Francis and that the remainder should go to the heirs of Francis; that is, the heirs of his body. The words "heirs" or "heirs of the body," are words of limitation of the estate, and not words of purchase. To those words the law attaches a definite meaning. When used by a testator, the law presumes that he used them in their legal sense, that he intended not individuals, but quantity of estate, and descent. Whenever they are employed, therefore, the burden is thrown upon him who contends that they are words of purchase, to rebut that presumption, and to show that they were used in the particular grant or devise to designate persons. The intent not to use the words in their legal sense must be unequivocal, and must be gathered from the language of the grant or devise: Doebler's Appeal, 64 Pa. 9; Guthrie's Appeal, 37 Pa. 9; Graham v. Abbott, 208 Pa. 68; Arnold v. Muhlenberg College, 227 Pa. 321; Hastings v. Engle, 217 Pa. 419; Shapley v. Diehl, 203 Pa. 566; Roth v. Cohn, 236 Pa. 534. There is nothing in this will to warrant the construction that it was the intention of the testator that those who were to take the remainder were to take otherwise than as heirs of the body of the life tenant. Under all our numerous authorities the life estate of Francis was, by force of the rule in Shelley's Case, enlarged into an estate entail, which, by operation of the Act of April 27,

1855, P. L. 368, was converted into a fee simple estate. This was the conclusion reached by the court below, and the specifications of error must be overruled.

The decree of the court below is affirmed and the appeal dismissed at cost of the appellants.