## Commonwealth *v.* Flick, Appellant.

Argued October 1, 1929.

Before PORTER, P. J., TREXLER, KELLER, LINN, GAWTHROP, CUNNINGHAM and BALDRIGE, JJ.

*A. B. Jobson* of *Breene & Jobson,* and with him *G. G. Martin,* for appellant.

*Albert L. Thomas,* and with him *Daniel B. Goodwin,* District Attorney, and *P. A. Wilbert,* for appellee.

OPINION BY KELLER, J., November 22, 1929:

In August, 1928, the defendant, Edmond Flick, was cashier of the Citizens Bank of Pleasantville, Pennsylvania. Among the securities of the bank under his control was a note of his brother-in-law, Charles E. Weaver, for $1,230, which he had discounted and used the proceeds to purchase 100 shares of Listie Coal Company stock, the certificate for which stood in his, Flick's, name. The board of directors took exception to the loan and Flick replaced the Weaver note with a note for the same amount of Forest B. Kuhns, dated August 17, 1928, and payable sixty days after date, which was satisfactory to the board.

In the early morning of September 24, 1928, before dawn, the bank-building was found to be on fire, and it was discovered that the bank safe had been opened, money to the amount of $3,212 stolen, securities removed, and the records of the bank saturated with gasoline and partially burned and destroyed. A metal box containing the notes bought or discounted by the bank, which had been in the safe, was missing and later was found locked, with its contents water-soaked but intact, in Oil Creek.

A colored man named Watson, who had been janitor of the Oil City National Bank while Flick was employed there as a clerk, was arrested, and confessed, implicating Flick as the instigator of the crime. He said that Flick, in inducing him to rob and burn the

bank and its records, etc., had said, inter alia, that there was a shortage in the bank of about $5,000, and that the metal box contained some notes which were "not right," and that he wanted it and the bank records destroyed. He told the officers where he had thrown the box. It was recovered, opened and among its contents, inter alia, were found the Kuhns note and notes purporting to be signed by J. L. Thompson and T. E. Williamson. Flick was arrested and indicted for felonious entry and the larceny of $3,212, money of the bank. When arrested there was found on him a note purporting to be signed by one Benedict, and the Weaver note for $1,230 above referred to, and also a loose leaf, apparently from the bank books, showing this note transaction. Watson was separately indicted for arson, felonious entry and larceny, pleaded guilty and was sentenced to the penitentiary. Flick was tried on the above indictments and acquitted.

Kuhns, Thompson and Williamson denied having signed the notes found in the metal box among the securities of the bank, and Benedict repudiated the signature to the note found on Flick's person, which had not been discounted. All of these notes were admittedly filled out in the handwriting of Flick.

The county detective made complaint against Flick charging him with forging the signature of Forest B. Kuhns to the $1,230 note above mentioned. He was indicted, tried and convicted, and it is from the judgment of sentence following this conviction that the present appeal is taken.

Five grounds for appeal are assigned.

(1) Defendant objected to the admission in evidence of any testimony of Watson relative to his conversation with Flick prior to the burning and robbing of the bank building, on the ground that Flick's subsequent acquittal on the indictment charging felonious entry and larceny was a conclusive adjudication on

that subject and required a direction that Watson's evidence be disregarded as in conflict with the verdict of the jury. The court ruled, and rightly so in our opinion, that the verdict of the jury in the prior trial conclusively established that Flick had not been guilty of the charges on which he had been tried, viz., the felonious entry of the bank building and the larceny of the money taken therefrom; but that it did not render incompetent or inadmissible the testimony of Watson as to the admissions of Flick relating to the shortage of his accounts and the fraudulent character of some of the notes in the metal box, and his desire to have it destroyed. We said in Com. v. Leib, 76 Pa. Superior Ct. 413, 423, where it was claimed that a verdict could not stand which acquitted a defendant of fraudulently uttering a written instrument, but found him guilty of having fraudulently made and signed it, although the only proof of such fraudulent making and signing within the county was found in the evidence of the uttering therein of such instrument: (omitting the citations) "Forgery and knowingly uttering a forged instrument are two distinct offenses, though they may be joined in one count if the forging and uttering were practically simultaneous and arose from the same act or transaction. An acquittal of forgery does not bar a prosecution for uttering the same forged instrument, nor does an acquittal of uttering a forged instrument preclude a subsequent prosecution for forging it. And any evidence introduced at the first trial which is relevant to the second prosecution may be offered and received on such trial; none of it is discredited, so as to bar its admission, or rendered incompetent, at the second trial, because of the defendant's acquittal at the trial when it was first presented." In Com. v. Greevy, 271 Pa. 95, where a defendant was acquitted of murder and voluntary manslaughter and subsequently on practically the same evi-

dence was convicted of involuntary manslaughter, the Supreme Court said: "Every one admits that res adjudicata conclusively determines not only the ultimate fact established by a verdict and judgment, but every other fact necessarily found in reaching the conclusion as to that ultimate fact; but this does not mean, as defendant asserts, that every defense he interposes is established, for he cannot point to any one of those defenses, and say it was upheld by the jury. Nor does it follow that because the evidence is the same in the two cases—even if we assume there was not the slightest difference—that the defeating of one action concludes also the other." In Bell v. State, 57 Md. 108, 115, a prosecution for forgery, the Court of Appeals of Maryland said: "An acquittal of a party does not ascertain or determine any precise facts. It may have resulted from an insufficiency of evidence as to some particular fact, where several facts are necessary ingredients of the crime: 2 Cowen's Phill. Ev. (4th Am. Ed.) 55, 56; Roscoe's Cr. Ev. 14th Ed. 184. Such an acquittal upon an indictment for uttering a forged check would not necessarily negative the fact that the check was forged, if in fact it was forged; nor the possession by the party of the forged paper, for the uttering of which he was indicted; nor that he uttered the forged paper for value. All these facts may have been found to be true and yet the party may have been acquitted because of the absence of proof of such facts and circumstances as were necessary to show that the accused uttered the forged paper with *intent to defraud*. The verdict of acquittal may have resulted from the fact that the jury could not, upon the evidence before them, find *all* the facts, which must exist and be proved, in order to constitute the crime of having forged, or uttered forged paper. The ground of such an acquittal can only be inferred by argument upon the judgment of acquittal ...... Notwithstanding such

acquittal, the possession of the check, its forgery and the uttering of it for value by the accused, might be used as evidence to explain his conduct, and show his intent in any other case in a court of justice, involving a charge against him of the same character, without putting him in danger of another trial by reason of such possession and use.'' See also: State v. Robinson, 1 Harrison (N. J. Law) 507, 513; People v. Frank, 28 Calif. 507, 515, 517; State v. Lucken, 129 Minn. 402, 152 N. W. 769. The doctrines of res judicata and autrefois acquit are really not involved in this appeal; the question is solely on the admissibility of evidence. There is nothing in those doctrines that requires us to hold that evidence received on one criminal trial which results in an acquittal is so discredited as not to be admissible in evidence and considered by the jury on the trial of a wholly different prosecution, if it is relevant and bears on the guilt or innocence of the accused; any more than that evidence received on a criminal trial which results in the conviction of the defendant, is to be accepted as conclusively established as true on the subsequent trial of the defendant on a different but related charge.

(2) Defendant objected to any evidence being received denying the genuineness of the signatures to the Thompson, Williamson and Benedict notes, and showing them to be simulated and forgeries. The evidence was not offered to secure a conviction by proof of other and distinct forgeries, but for the purpose of showing guilty knowledge, intent, system and design. In Underhill on Criminal Evidence (3d Ed.) Sec. 629 (p. 867) the text writer says: ''Evidence of similar forgeries, or of the possession of forged papers about the same time is admissible to show a uniform course of acting from which guilty knowledge and criminal intent may be inferred.'' The ruling of the court below is sustained by the decisions of the Supreme Court,

inter alia, in Com. v. Bell, 288 Pa. 29; Goersen v. Com., 99 Pa. 388; and of this court in Com. v. House, 6 Pa. Superior Ct. 92; Com. v. Rabinowitz, 73 Pa. Superior Ct. 221; Com. v. Dwyer, 79 Pa. Superior Ct. 485, 491; Com. v. Bell, 88 Pa. Superior Ct. 216, 223; Com. v. Griffin, 42 Pa. Superior Ct. 597. See also McCartney v. State, 3 Ind. 353; Bell v. State, supra, p. 117; The State v. Robinson, supra, p. 513; People v. Frank, supra. The admissibility of the evidence was not affected by the fact that defendant when he came to present his defense admitted that he had written the simulated signature but averred that he had been authorized to do so by Kuhns. The evidence so admitted did not become incompetent and irrelevant because of the defendant's subsequent testimony.

(3) Kuhns had testified for the Commonwealth that while Flick, the defendant, was in jail in Franklin, shortly after his first arrest, he sent another brother-in-law, Roberts, to Kuhns with a note, as follows: "Forest: There is a note of $1,250 in your name at Pleasantville. Please take care of it and I will explain when I see you. Keep this to yourself. (Signed) Ed. Flick."

On the trial the defendant offered to prove by W. E. James that he was on the defendant's bond in the felonious entry and larceny case; that sometime after he became bound he went to the defendant with the sheriff for the purpose of surrendering him; that the defendant said in substance "Will you go up and see Forest Kuhns before you carry out your intentions?" that the witness and the defendant Flick went to Mr. Kuhns, met him personally, and that in the presence of the witness defendant said to Mr. Kuhns in substance that he was not trying to put anything over on Mr. James, but that Forest (referring to Mr. Kuhns) knew all about this note, or knew all about this transaction, or words to that effect, and that Mr. Kuhns

made no reply. The court sustained the Commonwealth's objection, and refused to admit the evidence. Leaving out of consideration that in previous attempts to introduce the evidence the offer also stated that Kuhns had told James that the note was a forgery, there is nothing in the offer which amounts to an admission by Kuhns that he authorized Flick to sign his name to the note. It is entirely consistent with his testimony for the Commonwealth. The statement was cleverly contrived and might well have been understood by Kuhns to refer to the letter above quoted. There was certainly in it no distinct claim that Kuhns had authorized Flick to sign his name to the note and nothing that contradicted or rebutted the former's testimony. Kuhns was not the prosecutor; he was merely a witness for the Commonwealth; and the offer did not amount to a contradiction or rebuttal of his evidence. It was not like the case where one accused of crime is held bound to speak or rest under imputation of guilt if he keeps silent.

(4) We do not consider the charge as a whole to have been misleading and inadequate. On the contrary we think that it very fairly and fully defined the issues and instructed the jury on the law applicable to the evidence in the case. No good would be served by further dwelling on this point. The matters with respect to which appellant claims the jury were misled and confused by the court's charge, are chiefly those complained of above in (1) and (2), as to which we agree with the court's action.

(5) Error is also assigned to the charge of the court with respect to instructions on the weight to be given the greater number of witnesses if of equal credibility. This is an example of the unfairness of choosing an isolated sentence or extract from a charge and attempting to give it a meaning contrary to the thought expressed in the charge as a whole. At the conclusion of

the general charge counsel for the Commonwealth asked the court to instruct the jury that they might take into consideration the numbers testifying on either side, having regard, of course, to the credibility of each witness, whereupon the court explained the subject in the exact language used by the Supreme Court in the case of Braunschweiger et al. v. Waits, 179 Pa. 47, 51, as follows: "The weight of evidence is not a question of mathematics, but depends on its effect in inducing belief. It often happens that one witness standing uncorroborated may tell a story so natural and reasonable in its character, and in a manner so sincere and honest, as to command belief, although several witnesses of equal apparent respectability may contradict him. The manner and appearance of the witness, the character of his story and its inherent probability may be such as to lead a jury to believe his testimony, and accept it as the truth of the transaction to which it relates. The question for the jury is not on which side are the witnesses most numerous, but what testimony do you believe." At the further suggestion of counsel for the Commonwealth that the witnesses for the Commonwealth far outnumbered those of defendant, the court added "We will say to you that all things being equal, that is, all witnesses being of equal credibility, that the natural inference would be that those more numerous are correct. But remember what we said in the extract which we read that the weight of evidence is not a question of mathematics, but depends upon its effect in inducing belief;" in connection with which, see the language of Mr. Justice POTTER in Davies v. Phila. Rapid Transit Co., 228 Pa. 176, 178; then shortly after of his own motion, the trial judge called the jury's attention to the fact that his instructions on this subject were more correctly applicable to a civil case; that he had been referring to the weight of the evidence, whereas that

was not sufficient in a criminal case; that the preponderance of evidence was not sufficient to convict the defendant, it had to be such as to dispose of any reasonable doubt, dispel any reasonable doubt of his guilt. We do not feel that considered as a whole the charge on this point confused or misled the jury to the defendant's prejudice.

The assignments of error are all overruled. The judgment is affirmed and it is ordered that the defendant appear in the court below at such time as he may be there called and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed at the time the appeal in this case was made a supersedeas.