## Commonwealth *v.* Jones et al., Appellants.

Argued April 27, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*B. D. Oliensis,* for appellants.

*James W. Tracey, Jr.,* Assistant District Attorney, with him, *Charles F. Kelley,* District Attorney for appellee.

OPINION BY PARKER, J., July 10, 1936:

The defendants were indicted on sixteen bills, in eight of which they were charged with the offense of obtaining money from different prosecutors by false pretenses and in the remaining eight indictments with conspiracy to defraud the same prosecutors. All the cases were tried together and at the conclusion of the commonwealth's case the court directed the jury to return verdicts for the defendants on the false pretense charges and on one of the indictments charging conspiracy. The jury found all three defendants guilty of conspiracy on the seven bills submitted to them. These appeals by all three defendants are from judgments in a case (No. 1440) in which Margaret Howey was the prosecutrix, and will be considered in one opinion. The appellants complain of the refusal of their motions in arrest of judgment and for a new trial.

Four questions are raised by counsel for defendants under the fifteen assignments of error and we will follow that plan in our discussion. There are certain fundamental facts which apply to each position of the defendants and we will first refer to the facts and inferences of fact as the jury may be assumed to have found them. For some time prior to and during the latter part of 1934, there was maintained at least the framework of an unincorporated association known as "The Magistrates' and Constables' Association" of which David M. Ulrich was vice-president, and C. Scott Rickards, one of the defendants, was the secretary. This association had published a magazine known as the "Police Justices Manual" on an annual basis until

1932 and depended partly at least for its support upon paid advertisements. About November and December, 1934, the secretary associated with him as solicitors for membership in the association and advertisements in the manual the two remaining defendants, Jesse Jones and Thaddeus Rickards. The three defendants acting together pursued the practice of calling someone in the city of Philadelphia on the 'phone and saying that the speaker was either Magistrate Ulrich of Delaware County or Magistrate Muhly of Philadelphia, or was speaking for one of these magistrates. Usually the person calling would say that Magistrate Ulrich or Magistrate Muhly wished to speak to the person at the telephone and then another person would come to the telephone and say "This is Magistrate Ulrich or Magistrate Muhly" and proceeding with the conversation would say that a representative would be sent to the person for the purpose of interviewing him as to a subscription. Then the two defendants, Jones and Thaddeus Rickards, would an hour or so later go and interview the person. Witnesses testified that the person solicited would be asked: "Were you communicated with by Judge Ulrich or Judge Muhly." The solicitors would then urge upon the prospect the placing of an advertisement in the manual. The sums solicited were in different amounts. If they failed to secure a subscription for an advertisement they were satisfied with a less amount for membership in the association, the amounts demanded varying from $20 down. If inquiry was made as to the purpose of the subscription some one of the defendants would state that they offered subscribers protection, saying that if the person got into trouble, apparently referring to difficulty with traffic ordinances, all they would need to do would be to call up the office and the association would take care of them at any time. When the subscription was paid they delivered to the subscriber a printed courtesy

card which, they asserted, would procure the favor of magistrates, constables and other officers with whom they came in contact. It was further shown that Magistrate Muhly of Philadelphia, who appears to have been a well known personage in the city, had no connection with the association and had never authorized the use of his name or the making of any representations. Magistrate Ulrich of Delaware County denied that he authorized the making of any improper representations. Inference could be drawn from the testimony that the association for several years prior to 1935 had a shadowy existence and that the meetings of the members of the association were held principally for the purpose of electing officers. Although material and advertisements for annuals from 1933 to 1935 inclusive were gathered together and some of these delivered to a printer, the manuals were never published.

In his charge the trial judge submitted to the jury several propositions which we may assume were resolved adversely to the defendants. Some of the questions submitted were: (1) Whether the Magistrates' and Constables' Association was a bona fide organization or a mere "racket" or scheme to obtain money; (2) whether the defendants had a bona fide intention to publish the "Police Justices Manual" for which they solicited advertisements; (3) whether they made promises of protection or immunity, which they were of course in no position to secure; (4) whether they used the name of Magistrate Muhly in their solicitations.

1. The first complaint is to the receipt of testimony of one Catherine Quigg, who was not a prosecutrix and who testified in considerable detail as to the acts and statements of the defendants to her at about the same time as the particular occurrences related by the respective prosecutors.

"It is an established rule, applicable alike to civil and criminal inquiries, that the commission of the act

charged cannot be proved by showing a like act to have been committed by the same person": *Veit v. Class & Nachod Brewing Co.*, 216 Pa. 29, 33, 64 A. 871. There are equally well established cases where this rule does not apply as in those where knowledge or intent of the party was a material fact and in which the evidence had a direct bearing *(Keiter v. Miller,* 111 Pa. Superior Ct. 594, 596, 170 A. 364) and those cases when the very doing of the act charged is still to be proved and one of the evidential facts receivable is the person's design or plan to do it: 1 Wigmore on Evidence §304. As Professor Wigmore there points out, when evidence of similar acts is received to show intent, the result is to give complexion to a conceded act, but in the latter case to show a precedent design "which in its turn is to evidence (by probability) the doing of the act designed. The added element, then, must be, not merely a similarity in the results, but such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations." These principles have been recognized so frequently in our cases as to be commonplace: *Com. v. Pugliese,* 44 Pa. Superior Ct. 361; *Com. v. Camwell,* 89 Pa. Superior Ct. 339, 345; *Com. v. Bonnem,* 95 Pa. Superior Ct. 496, 506; *Com. v. Flick,* 97 Pa. Superior Ct. 169, 174; *Com. v. Bell,* 288 Pa. 29, 34, 135 A. 645. The evidence of Mrs. Quigg was properly received for the purpose of showing a common plan or design, in fact, a part of the very scheme alleged by the commonwealth's prosecuting witnesses.

2. It is next contended that since the defendants were acquitted on the false pretense charges they could not be convicted on the charges of conspiracy. This position is predicated on the statement that the representation alleged in the former charges were the basis of the unlawful conduct by defendant in the latter charges. The learned trial judge in an opinion dis-

posing of defendants' motions clearly and tersely answered this contention as follows: "All of the indictments being before the same jury, even if the suggested rule of construction were adopted, an acquittal on the false pretense bills would not of itself avoid a conviction of the conspiracy. Even so construed the indictments would charge the distinct offenses of false pretense and conspiracy, and a jury might lawfully acquit of the one and convict of the other. But with respect to the conspiracy bills the Commonwealth did not rely upon nor the evidence concern the specified false pretenses alone. There was other evidence, notably that of promises of official protection to contributors in case of arrest for traffic law violations, which placed the conspiracy indictments upon a wider base than those for false pretense." Practically the same situation appeared in the case of *Com. v. Flick*, supra (p. 171 et seq.). The matter is so ably and fully discussed in that case that we will not repeat what was there said.

"Every one admits that res adjudicata conclusively determines not only the ultimate fact established by a verdict and judgment, but every other fact necessarily found in reaching the conclusion as to that ultimate fact; but this does not mean, as defendant asserts, that every defense he interposes is established, for he cannot point to any one of those defenses, and say it was upheld by the jury. Nor does it follow that because the evidence is the same in the two cases,—even if we assume there was not the slightest difference,—that the defeating of one action concludes also the other": *Com. v. Greevy*, 271 Pa. 95, 101, 114 A. 511. As the trial court pointed out, the facts were not the same.

It is also to be noted that the verdicts of acquittal and of conviction were rendered by the same jury at the same time. As we said in *Com. v. Kline*, 107 Pa. Superior Ct. 594, 604, 164 A. 124: "We do hold that where a defendant is charged in separate courts of an

indictment with different offenses arising out of the same transaction or in different language is charged with the same offense, the mere fact that the defendant is found guilty upon one count and not guilty upon another will not sustain a motion in arrest of judgment as to the count on which a verdict of guilty is found." The principle applies with equal force where different indictments are submitted to the same jury. See also *Com. v. Campbell,* 116 Pa. Superior Ct. 180, 189, 176 A. 246.

3. The appellants next claim that because the sixteen indictments were returned at the same time and the false pretense charges specified such pretenses and the conspiracy indictments did not specify the unlawful conduct of the defendants, the commonwealth was limited to the charges of misconduct contained in the former. We are of the opinion that the actual question here involved regardless of the angle from which it is approached is whether the conspiracy indictments were sufficient, for the indictments were separate and distinct. The indictment in question charged that the defendants did unlawfully, falsely, fraudulently, wilfully and maliciously combine, confederate, conspire and agree together among themselves by divers unlawful, false, fraudulent, wilful and malicious means, devices and contrivances then and there unlawfully, falsely, fraudulently, wilfully and maliciously to cheat and to defraud one Margaret Howey of certain of her monies and property, to wit, the sum of $20. The offense of conspiracy is defined by Act of March 31, 1860, P. L. 382, §128 (18 PS 2451). It is apparent that the indictments are in substantial conformity with that act and under Act of March 31, 1860, P. L. 427, §11, (19 PS 261) are sufficient: *Com. v. Bonnem,* supra (p. 503). The record does not disclose any motion to quash. It may well have been that if the defendants had requested a bill of particulars the

district attorney would have been required to furnish the same. The defendants could not under these circumstances take their chances on the verdict and then afterwards, when it was unfavorable to them, complain.

4. Finally the appellants complain of what they allege was a misstatement of fact in the charge to the jury. In the course of the charge the court said: "It seems apparent from the testimony of most of these witnesses, and it seems in fact conceded by the testimony of the defendants themselves, that the practice of these three defendants was, in the first place, some individual in the City of Philadelphia, and so far as we know, it was limited to Philadelphia, was called up by telephone—called by someone who represented himself either to be Magistrate Ulrich of Delaware County or Magistrate Muhly of Philadelphia, or was speaking for such magistrate." The defendants' witnesses denied that they had used the name of Magistrate Muhly, but admitted that they had used the name of Magistrate Ulrich. In so far as the trial judge may have conveyed to the jury the impression that the defendants had admitted the use of the name of Magistrate Muhly the statement was not correct. However, at the close of the charge the trial judge said: "Are there any corrections, gentlemen, or suggestions for further charge?" Counsel for the defendants pointed to no error in the statement of the facts and only made a request for a general exception to the charge. We are convinced that the error was harmless as the jurors had had the witnesses before them and may be assumed to have remembered the testimony. In any event, the error, apparently inadvertent, was such that it was the duty of counsel for defendants to call the attention of the court to the misstatement and request a correction.

Judgment of the court below affirmed, and it is directed that the appellants appear in the court below at such time as they may be there called, and that they be

by that court committed until they have respectively complied with their sentences or any parts of them which had not been performed at the time the appeals were respectively made a supersedeas.