## Commonwealth *v.* Lennon, Appellant.

Argued October 20, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-
FELD, PARKER, JAMES and RHODES, JJ.

*B. D. Oliensis,* for appellant.

*Charles C. Gordon,* Assistant District Attorney, with
him *Charles F. Kelley,* District Attorney, for appellee.

OPINION BY PARKER, J., November 19, 1936:
The defendant was indicted and convicted on four

bills, including one for assault and battery with an offensive weapon and with an intent to rob. The charges grew out of an armed hold-up in December, 1934, by a band of desperadoes, and the robbery of a pay roll of the Philadelphia Electric Company, amounting to $46,000. The appellant complains of that part of the instructions of the trial judge which dealt with reasonable doubt, and of the admission of a typewritten paper which it is alleged was not properly proved.

(1) In charging the jury the learned trial judge said: "A reasonable doubt is not a fanciful or a conjectural doubt, not a possible doubt, but is a doubt arising from the evidence and of such nature as if arising in your ordinary affairs of business would cause you to hesitate and prevent you from acting." The appellant contends that the parallel drawn from experience was not in accord with the definitions of reasonable doubt as given by the Supreme Court, and that such a doubt is not one that arises in "ordinary affairs of business", but should be confined to that which arises in "an affair of importance".

The definition of reasonable doubt given in *Commonwealth v. Green*, 292 Pa. 579, 590, 141 A. 624, by former Chief Justice MOSCHZISKER, is clear and in harmony with the cases decided before and after, and if followed by trial judges would avoid question. However, we cannot say that the charge as given was reversible error. In *Com. v. Bryson*, 276 Pa. 566, 573, 120 A. 552, it was defined by the trial judge as "a doubt that would make you hesitate, out in your own everyday life, to believe the existence of anything as a fact, in your ordinary everyday affairs, in a matter of personal concern to yourself." In considering a complaint as to this charge the former Chief Justice said: "While it may well be argued that the kind of doubts which may arise in the *trivial* affairs of everyday life would not be grave enough to be regarded as reasonable in

the criminal law, it is equally true, on the other hand, that to require such a doubt as would influence or control *only the most important* transactions of life, would be too strong a phrase to describe properly the kind of reasonable doubt contemplated by the law: *Com. v. Miller,* 139 Pa. 77, 94. The language of the court below strikes a mean between these extremes and very properly requires such a doubt as would cause a reasonable man to hesitate in an event of ordinary importance to himself; it is in substantial accord with our decisions on the subject."

In *Com. v. Barrish,* 297 Pa. 160, 165, 146 A. 553, reasonable doubt was defined as "a doubt that would cause a reasonable man in the conduct of his usual and ordinary affairs to stop, hesitate and seriously consider as to whether or not he should do a certain thing before finally acting." Certainly those things which occur in ordinary affairs of business are such as occur in everyday life, and are a matter of concern to the person experiencing them. In the Barrish case the Supreme Court refused to reverse, holding that there was no reversible error in that the charge favored the defendant. In the light of the Bryson and the Barrish cases the lower court was not guilty of reversible error in this respect. In further answer to appellant's argument we call attention to the fact that the trial judge, in the charge we are considering, in drawing his parallel, referred not only to hesitation to act, but to the action or decision made after hesitation and consideration. Even if the reference had been confined to hesitation, that would have been favorable to defendant.

(2) Prior to the trial of the defendant, William Bakey plead guilty to bills of indictment arising out of the same hold-up. It was shown on the trial, by the testimony of four detectives, that Detective McGorian had questioned Bakey in their presence and in the presence of the defendant, Lennon, in a cellroom in

the City Hall. The questions and the answers of Bakey were taken down stenographically and transcribed. The alleged replies of Bakey tended to show that he admitted participation in the hold-up, that defendant took part in the robbery, holding employees of the Electric Company at bay with a revolver, and that Lennon received $9,000 as his share of the money, and furnished the automobile which was used in the hold-up. A typewritten stenographic report of the interrogation of Bakey was produced but it was not signed by Lennon, was never read to him, and the stenographer who took the notes of testimony and was alleged to have transcribed them was neither produced nor his absence accounted for. This exhibit showed at the end the following colloquy between Detective McGorian and the defendant: "Q. (Addressing Joseph Lennon, present) Lennon, you heard what Bakey has said? A. Yes, sir. Q. What have you to say? A. Nothing." Detective McGorian also testified from memory to the same conversation with the defendant. The entire typewritten statement, over the objection and subject to an exception by the defendant, was received in evidence and read to the jury.

The statement was not received as affirmative evidence by Bakey in support of the commonwealth's case, and, of course, was not competent for that purpose (*Commonwealth v. Smith*, 105 Pa. Superior Ct. 497, 161 A. 418), but as a statement made in the presence of one accused of a crime for the purpose of having the jury infer that his silence under the circumstances furnished the basis for an inference that the defendant assented to the correctness of the statements of Bakey, in so far as they showed participation by the defendant in the crime here charged. In support of the right of the commonwealth to offer evidence when properly proved, showing assent of the defendant to statements made in his presence, see *Com. v. Smith*, supra and 111

Pa. Superior Ct. 363, 170 A. 331, *Ettinger v. Com.,* 98 Pa. 338, 345, *Com. v. Epps,* 298 Pa. 377, 380, 148 A. 523.

The factum probandum with which we are here immediately concerned is the statement alleged to have been made by Bakey in the presence of the defendant. We do not agree with the contention of the learned counsel for the defendant that the statements of Bakey could be shown only by calling the stenographer and having him identify and translate his notes. This question has frequently arisen in the proof of testimony given in a judicial inquiry. "The rule from the beginning has always been that no preferred witness is recognized, in proving testimony given at a former trial; in other words, any one who heard it may testify from recollection, with or without the aid of written notes": 2 Wigmore on Evidence, §1330. The principle involved is the same where the statements or conversation to be proved were not made in a judicial inquiry and the statement has not been reduced to writing at the time and authenticated in some manner. There is no general rule now in force that the best evidence must be introduced before inferior evidence; there are only certain special rules as to special classes of cases: 2 Wigmore on Evidence §1173 and §1174. Consequently the oral testimony of McGorian and the other detectives would have been competent to prove the statements of both Bakey and the defendant. The difficulty is that the commonwealth attempted to prove these statements by a document which was mere hearsay. This was not a judicial hearing, and, so far as the record discloses, the testimony was taken by a private stenographer. "The reports of an ordinary *private stenographer* are of course not receivable, being merely hearsay reports by a person not produced": 3 Wigmore on Evidence, §1669 (b). The stenographer should have been called. The court below in an opinion supporting a refusal

of a motion for a new trial relied upon the following question which was propounded by the court to one of the detectives and the answer thereto: "By the Court: Q. Were the questions and answers taken down and do they appear on that paper as given? A. Yes, sir." To this question and answer defendant objected and an exception was granted to him. The statement in question covered three pages and it is absurd to assume that the witness could testify from memory to the accuracy of the entire report. In addition, this was not a proper way to elicit from the witness his own recollection of the interrogation of Bakey. As we have indicated above, it would have been competent for the detectives to have testified to what they remembered as to the statements made by Bakey and the defendant, but they could not thus prove an alleged stenographic report. In the instant case, the witness testified not from memory nor from memory revived by notes taken by the witness at the time, but to the notes of another person. The exhibit having been received in evidence, we may assume that it went out with the jury giving the commonwealth an additional advantage to which it was not entitled. We were informed on the oral argument, by the assistant district attorney, that the stenographer was in the city building at the time and might have been called, but he was not called. Under such circumstances we are of the opinion that it was error to receive the typewritten exhibit.

Judgment reversed and a venire facias de novo awarded.