Opinion by
 

 Cunningham, J.,
 

 Following a general verdict of guilty rendered against her upon separate indictments — one, charging the Common law offense of inciting to riot, and the other, the statutory misdemeanor of being concerned in a riot, within the meaning of Section 19 of the Act of March 31, 1860, P. L. 382, 18 PS §551 — appellant was sentenced to pay the costs, a fine of $100, and be confined in the county jail for a term of six months. The trial judge did not specify under which indictment the judgment was pronounced and we now have her separate appeals which will be< disposed of in a single opinion.
 

 The principles of law applicable to the trial and disposition of the charges contained in the indictments, which were drawn upon a single information, are well established. The above cited section of the penal code does not define the term “riot,” but using the word in the sense in which it was employed at common law and in earlier statutes, prescribes that any person convicted of being concerned in any riot shall be guilty of a misdemeanor and sentenced “to pay a fine not exceeding five hundred dollars, or undergo an imprisonment not exceeding two years, or both, or either, at the discretion of the court.”
 

 This court, in the course of its opinion in
 
 Com. v. Merrick et al.,
 
 65 Pa. Superior Ct. 482, 491, approved and adopted the following definitions of the offenses
 
 *161
 
 here charged: “Inciting to riot, from the very sense of the language used, means such a course of conduct, by the use of words, signs or language, or any other means by which one can be urged on to action, as would naturally lead, or urge other men to engage in or enter ‘upon conduct which, if completed, would make a riot. If any man or set of men should combine and arrange to so agitate the community to such a pitch, that the natural, and to be expected results of such agitation, would be a riot, that, would be inciting to riot, an offense at the common law.” The essential element of riot which constituted the basis of the indictments in the case at bar was the assembling together of three or more? persons in a riotous, tumultuous, and disorderly manner, and proceeding with a common intent and purpose to the commission of unlawful acts which tended to alarm and terrify law-abiding citizens engaged in the peaceful exercise of their; constitutional rights and privileges. See also
 
 Com. v. Spartaco,
 
 104 Pa. Superior Ct. 1, 158 A. 623, where this court set aside a conviction of inciting to riot because of the insufficiency of the proofs of the Commonwealth, and
 
 Com. v. Egan,
 
 113 Pa. Superior Ct. 375, 173 A. 764, where a conviction was sustained.
 

 While it is true, as stated in
 
 Com. v. Safis et al.,
 
 122 Pa. Superior Ct. 333, 186 A. 177, that inciting to riot and riot are legally separate and distinct offenses, and that the former is not necessarily a constituent element of the latter and that one may incite a riot and not participate in it, or may be concerned in a riot without having incited it, yet it is equally true that the offense of inciting to riot may become merged in the more serious crime of riot. For instance,
 
 Com. v. Merrick et al.,
 
 supra, was a case of that nature and at pages 491-492 this court said: “When the evidence clearly shows that meetings originally peaceful and orderly are so persisted in that they degenerate into
 
 *162
 
 dangerous and lawless assemblages, the offense of riot is complete, and [as to] those who were originally identified with the peaceful and orderly meetings and who persist and continue in their relation to the general undertaking until it assumes riotous proportions, the offense of inciting to riot, while a distinct and separate offense, becomes merged in the more serious crime of riot, and such participants are criminally identified with each.”
 

 The only difference, with respect to this feature, between the Merrick case and the case at bar is that in the former the offenses were charged in separate counts of the same indictment, and in the latter were set forth in separate indictments, each of which contained one count.
 

 By the fourteenth and nineteenth assignments of error it is charged that the trial judge erred in instructing the jurors that if they believed the testimony of the Commonwealth and disbelieved that of the defendant and her witnesses they “would be warranted in finding her guilty on both indictments, or on either one, as you may think the evidence warrants,” and in pronouncing the sentence without specifically designating the indictment to which it was intended to apply. In immediate connection with the quoted instruction, the court also charged, “If you should disbelieve the evidence upon the part of the Commonwealth and believe only the evidence on the part of the defendant, then it would be equally your duty to acquit the defendant.” The instruction was technically correct.
 

 With respect to the form of the sentence, we see no reason why the familiar principle, that “if there be one count in an indictment to sustain a sentence imposed it is enough,”
 
 (Com. ex rel. Biscetti v.
 
 Leslie, 290 Pa. 530, 139 A. 195), should not be applied to a case in which the related counts happen to be contained in separate indictments. In
 
 Com. v. Gayton,
 
 69 Pa. Su
 
 *163
 
 perior Ct. 513, the first paragraph of the syllabus reads: “If there is sufficient evidence to sustain a conviction under one count in an indictment, and a sentence is imposed clearly within the law as applicable to the offense charged in such count, the conviction and sentence will be sustained, though the defendant may have been found guilty on another count which is unsupported by the evidence.” As the sentence here appealed from is well within the punishment prescribed by the statute for being concerned in a riot, these assignments are dismissed.
 

 The other questions involved upon this appeal are whether the trial judge erred in, (a) refusing appellant’s point to the effect that under the law and all the evidence the verdict should be “not guilty”; (b) admitting, over the objection of counsel for appellant, certain lines of testimony; and (c) charging the jury.
 

 The background of the case was an organized strike by a number of women employees of a factory in Berwick, Columbia County, operated by the “Lady Ester Lingerie Corp.,” who, with the assistance of several organizers and a number of' striking employees from other plants, picketed the entrances to the Lady Ester factory for the purpose of preventing the employees desiring to continue at work from entering the plant. The strike was called August 3d and continued until August 25, 1937, with the exception of approximately two weeks following August 9th, during which the plant was closed. When the record is considered as a whole, it cannot be successfully denied that the persons engaged in picketing the factory created a series of riots, within the meaning of the above cited section of the statute and the language of this court in
 
 Com. v. Kahn et al.,
 
 116 Pa. Superior Ct. 28, 176 A. 242, a case involving the conduct of persons engaged in picketing the German Consulate on Walnut Street, Philadelphia.
 

 
 *164
 
 The date upon which appellant was charged in the indictment with having been concerned in a riot was August 25, 1937. There was testimony with relation to events preceding the occurrences of that date to the effect that at various times during the strike certain employees, in numbers varying from fifteen to one hundred and thirty, picketed the mill at starting time in the morning and by conduct, so boisterous, turbulent and disorderly, as to constitute a breach of the peace, endeavored to prevent the employees who wanted to go on with their work from using the entrances into the plant.
 

 It was the general contention of the Commonwealth that even if it be assumed the striking employees were originally organized and assembled at the entrances to the factory for the purpose of “peaceful picketing,” their conduct soon passed all lawful bounds, became riotous, and reached a culmination on the date set forth in the indictments. It undertook to support the specific charges therein contained by showing that between six and seven o’clock on the morning of August 25, 1937, appellant was a member of a group of pickets, from forty to, fifty in number, who had assembled at the south entrance to the plant for the unlawful purpose of forcibly preventing non-striking employees of the factory from entering the plant; that appellant not only joined with and encouraged the other pickets in blocking the entrance and intimidating the employees desiring to go to work by threats of personal violence, but also, as an automobile filled with workers was being driven through the obstructing pickets, threw a stone, about the size of an egg, which hit the car “midway between the fender and rear glass.” A citizen living near the mill testified that shortly before the stone was thrown he heard one of the pickets call out, “Here comes a car; let’s stone it.”
 

 The representatives of the Commonwealth called
 
 *165
 
 twenty-one witnesses, among them special policemen, people living adjacent to the mill and employees who continued to work during the strike, who described in detail the conduct of the strikers. Their testimony may be thus summarized: On August 3d there were only fifteen or twenty pickets at the plant; as the strike progressed the numbers increased until by the 25th there were about one hundred and thirty. The pickets arrived before seven o’clock every working morning and crowded around the mill entrances making it difficult for a bus, used to transport non-striking employees, and for other workers who came in private cars, to get through the gates. They formed a double line or circle on the sidewalk in front of the entrances and prevented the bus from entering the plant until the picket line was pushed back and opened up by the police.
 

 During the course of the strike the groups of pickets “hollered, milled and yelled,” and called the non-striking workers various names such as “scabs,” “yellow birds,” “blue birds,” “fat bitches,” “rats,” “brainless,” “scum' of the earth,” and “gutter snipes.” Police officers were referred to as “dollar grabbers,” “tin horn cops,” and “tin stars.” Other threats and epithets addressed and applied to the workers were “you got in this morning but we’ll get you tomorrow morning”; “come out here, you bastard”; “we want Miss Souchak with a rope around her neck.”
 

 The pickets were more active beginning Monday, August 23d, whén the mill reopened, and continuing up to and including August 25th, the morning of appellant’s arrest. On Monday evening a group of pickets remained all night, sleeping on the sidewalk and creating more or less disturbance to the annoyance of persons living near the mill. A number of pickets came from outside the town of Berwick, arriving each morning about seven o’clock in buses and private cars.
 

 
 *166
 
 In addition to the blocking of the entrance to the mill against the company bus and employees’ cars, a member of the crowd of pickets, on the morning of August 24th, threw a stone through the glass door of the bus. Appellant, then a member of the group, defied a police officer to find out who threw this stone. Several pickets, on August 23d, jumped on the running board of the company bus and attempted to reach and pull out its occupants as it entered the mill. At least two stones were cast by pickets through the windows of the factory; other objects thrown by pickets were tomatoes and an orange, the latter striking a girl worker standing inside the mill. Groups of three to five women attempted to climb in the mill windows.
 

 One of the employees testified to having been grabbed by the wrists and pushed and shaken by pickets while she was entering the mill. That such conduct constitutes a riot within the meaning of the statute cannot be questioned. Intimidation of employees desirous of remaining at work through the use of offensive personal epithets, threats of, and attempts to inflict, physical injuries are characteristics of the offense. Compare
 
 Com. v. Merrick et al.,
 
 supra, p. 490, and
 
 Com. v. Brletic et al.,
 
 113 Pa. Superior Ct. 508, 173 A. 686.
 

 With relation to appellant’s connection with the riotous conduct of the pickets, she testified that she joined the picket line on the morning the strike was called and was in it each day, with the exception of three or four, during the time the plant was in operation, and particularly on the mornings of August 23d, 24th and 25th. ¡She positively denied, however, that she participated in the throwing of stones or any other kind of disorderly conduct. Eeferring particularly to the morning of August 25th, she admitted she was in the group from which the stone came and heard it strike the car, but asserted she did not know by whom it was
 
 *167
 
 thrown. Her statement was that her motive in joining the pickets practically every morning the strike was in progress was that she merely “wanted to see what was going on.” In reply to the question, “Why did you go?” she said, “We didn’t want to do any damage. We just wanted to talk nice to the girls.” On the other hand, at least six witnesses for the Commonwealth positively identified appellant as the person who threw the stone which struck the car containing a number of girls endeavoring to go to work that morning. Several witnesses testified appellant was an active member of the pickets throughout the strike, but no particular attempt by her to inflict physical injury upon working employees was shown, except the throwing of the stone on August 25th.
 

 It is perfectly clear that the testimony raised a question of fact for the jury. By her own admission, appellant’s almost continuous presence when riotous acts were committed by the pickets was intentional. The trial judge submitted to the jury in a charge, to which only a general exception was taken, the issue whether her presence was due, as she alleged, to mere curiosity to see what might happen and for the purpose of peacefully persuading other employees to join the strike, or, as the Commonwealth contended, for the purpose of forcibly preventing non-striking employees from continuing at work. Appellant’s eighth point for charge, reading, “If, from all the credible evidence in the case, the jury finds that on the day of the defendant’s arrest, to wit: the 25th day of August, 1937, she did not commit any breach of the peace, act of violence or cause or participate in any riotous conduct, then your verdict should be not guilty,” was affirmed.
 

 The first ten assignments charge error in admitting, over the objection of counsel for appellant, and refusing later to strike out, testimony relative to riotous acts of the strikers committed prior to the date laid in the
 

 
 *168
 
 indictments. As above stated, appellant admitted she was present upon many of the occasions described in this testimony. The trial judge permitted the Commonwealth to show the number of pickets, their actions and the fact that defendant was among them, during the period from August 3d, when the strike began, up to and including August 25th, but confined the testimony to strike conditions existing at this particular plant.
 

 We think this testimony was properly admitted, under the facts developed in this case, for the purpose of showing appellant’s intent and purpose in becoming a member of the picketing group of strikers. Evidence of her previous conduct (within a limited period) and that of her associates was admissible for the purpose of showing the intent with which such acts were committed. It tended to negative her contention that she was an innocent bystander, mistakenly accused of throwing a stone at a car transporting employees who insisted upon their right to work, and supported the contention of the Commonwealth that the specific act of violence charged against her was one of a series committed pursuant to a common purpose and design.
 

 The principle established in cases involving embezzlement and conspiracy to cheat and defraud is equally applicable here. Our Supreme Court, affirming and quoting from the opinion of this court, in
 
 Com. v. Bell,
 
 288 Pa. 29, 34, 135 A. 645, said: “This evidence...... was admissible under the well settled rule that evidence of similar and unconnected offenses may be offered to show guilty knowledge, design, plan, motive and intent when such is in issue, and this is true although the other offenses are beyond the statutory period:
 
 Com. v. Swab,
 
 59 Pa. Superior Ct. 485;
 
 Com. v. Shields,
 
 50 Pa. Superior Ct. 1;
 
 Goersen v. Com.,
 
 99 Pa. 388;
 
 Com. v. Johnson,
 
 133 Pa. 293. Here the evidence tended to show that the offenses charged were part of a system
 

 
 *169
 
 and were wilful and intentional and could not have been the result of accident or mistake.” See also:
 
 Com. v. Flick,
 
 97 Pa. Superior Ct. 169;
 
 Com. v. Huster,
 
 118 Pa. Superior Ct. 24, 178 A. 535;
 
 Com. v. Jones et al.,
 
 123 Pa. Superior Ct. 56, 60, 186 A. 765.
 

 “What is to be kept in mind is that the intent principle is available wherever the intent accompanying an act is to be shown, the other acts being so far similar as to negative by their recurrence that innocent intent which might be conceded for one occasion but becomes less supposable with every repetition; ...... These principles may thus have application on a charge of rioting, or the like, ......” 1 Wigmore on Evidence, Sec. 367, page 679.
 

 Among the cases cited by Wigmore as applying this principle to prosecutions for riot and inciting to riot is
 
 State v. Schleifer,
 
 102 Conn. 708, 130 A. 184. In that case, defendant, who addressed a group of railroad employees urging them to cripple the engines and rolling stock of the company to effectuate their demands, was convicted of solicitation to commit the crime of riotous damage. At the trial, evidence of general strike conditions between July 1, 1922, and November 22, 1922, the date of defendant’s speech advising violent action, was admitted over objection. The Supreme Court of Connecticut ruled (p. 189 of 130 Atlantic) : “Evidence concerning these several subjects upon the date of the crimes with which the accused was charged and in the period immediately surrounding this date was admissible....... The difficulty in application arises in determining the extent of the period immediately surrounding this date.......What would be a reasonable period within which to permit evidence of the conditions relating to thisj strike is a matter of judgment, and hence largely one of judicial discretion. The evidence offered was too remote. Evidence of that nature covering a period of a month would furnish all the back
 
 *170
 
 ground of facts with which to explain the occurrence of November 22.” A new trial was granted for additional errors in the admission of evidence.
 

 Similarly, in our own case of
 
 Com. v. Merrick et al.,
 
 supra, based upon charges of the character here involved, the opinion holds that testimony concerning strike conditions over a period of three weeks was properly admitted. Portions of the opinion read (pp. 484 and 487) : “The testimony is voluminous, describing events occupying three weeks of time, and affecting directly or indirectly many thousands of people;...... Many of the assignments of error relate to the admission of testimony of the character quoted above, which assignments on careful examination cannot be sustained as all such testimony related to persons and incidents directly associated with acts of violence.”
 

 In the present case evidence of conditions at the beginning of the strike on August 3,1937, which definitely tended to connect appellant with the strikers’ activities, cannot be held so remote as to be irrelevant or prejudicial. The assignments are accordingly overruled.
 

 Of the remaining assignments, the twelfth, thirteenth and eighteenth, based upon alleged errors in the charge, are the only ones meriting discussion. The complaint that the trial judge did not give adequate instructions upon the element of “intent” cannot be sustained. In describing the offense of riot, the trial judge instructed the jury, inter alia, that one of its elements was that three or more persons assemble and act together “with a common intent” to execute some definite purpose in a violent and turbulent manner. No additional instructions upon the subject were requested.
 

 The twelfth and thirteenth assignments question the following portions of the description of a reasonable doubt. “A reasonable doubt must be a doubt arising from the evidence, substantial, well
 
 founded on reason
 
 and common sense. It is not merely any passing fancy
 
 *171
 
 that might come into the mind of the jury. A reasonable donbt such as would be taken notice of by a jury in deciding a case or a question in a case is of the same nature as a doubt that would cause a reasonable man or woman, in the conduct of his or her
 
 usual and ordinary
 
 affairs, to stop, hesitate and seriously consider as to whether or not he or she should do a certain thing before finally acting.” (Italics supplied)
 

 In
 
 Com. v. Dauphinee et al.,
 
 121 Pa. Superior Ct. 565, 183 A. 807, decided upon other grounds, this court, at pp. 589-590, indicated that in its opinion the language “well founded on reason and common sense” was not equivalent to charging that a juror must be able to give “some proper reason for entertaining” a doubt. When followed, as it was in the present case, by the statement that a reasonable doubt “is not merely any passing fancy that might come into the mind of the jury,” we think the instruction, as a whole, was equivalent to saying that a doubt to be reasonable must be substantial, as opposed to fanciful, and was not erroneous. On the other phase of. the definition we also said in
 
 Com. v. Dauphinee et al.,
 
 supra, that the illustration commonly used in the authorities was that of a person hesitating to act while engaged in matters of “importance” or “highest concern” to himself. That seems to have been the general rule down to
 
 Com. v. Barrish,
 
 297 Pa. 160, 165, 146 A. 553, in which the trial judge used the language adopted by the court below in the case now at bar, including the phrase, “conduct of his usual and ordinary affairs.”
 

 That instruction was assigned for error, but our Supreme Court, in an opinion by Mr. Justice Kephart, (now Chief Justice) held that it was .more favorable to the defendant than the expression, “matters of importance” would have been, and concluded the discussion of that branch of the case by saying (p. 166), “We find no reversible error in this respect, because it
 
 *172
 
 favored the defendant.” See also
 
 Com. v. Yancer,
 
 125 Pa. Superior Ct. 352, 189 A. 684, and
 
 Com. v. Lennon,
 
 124 Pa. Superior Ct. 47, 188 A. 84.
 

 As the instructions now assigned for error followed verbatim those approved by the Supreme Court in the Barrish case, we must decline the task, urged upon us in the comprehensive, able and illuminating, brief of the learned and experienced advocate for appellant, of considering whether the use of the word “important” is more favorable to a defendant than the use of the phrase “usual and ordinary.”
 

 We have given careful consideration to each of the twenty assignments but are unable to sustain any of them.
 

 The judgment and sentence is affirmed, and it is ordered that the appellant appear in the court below at such time as she may there be called and that she be by that court committed until she has complied with the sentence, or any part thereof which had not been performed at the time the appeal in this case was made a supersedeas.